CAMPBELL, Appellee and Cross–Appellant,

v.

KRUPP et al., Aames Funding Corporation, Appellant and Cross–Appellee;

Old Republic National Title Insurance Company, Cross–Appellee.

[Cite as *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1224.

Decided June 3, 2011.

Gary A. Breier, for appellee and cross-appellant.

Thomas W. Heintschel and Laura C. Infante, for appellant and cross-appellee.

Thomas W. Heintschel, for cross-appellee.

YARBROUGH, Judge.

{¶ 1} This is an appeal and cross-appeal from a decision of the Lucas County Court of Common Pleas granting summary judgment for plaintiff-appellee/cross-appellant Dorothy Campbell, quieting title in real property located at 6119 Seaman Street in Oregon, in Lucas County, Ohio. Upon consideration of the assignments of error, we affirm.

{¶ 2} The facts of this case are as follows. William F. Fisher ("Fisher"), now deceased, was the father of William F. Fisher Jr. ("Fisher Jr.") and Penny Krupp. Fisher also was a longtime close companion and friend of Campbell. In 1989, after suffering a stroke, Fisher moved in with Campbell and resided with her until 2002, when he subsequently moved into a nursing home. During the time that Fisher and Campbell lived together, Fisher rented out his house in Oregon, Ohio, and used the rental income to pay off the mortgage on that house. Fisher's Oregon house is the property at issue in this appeal.

{¶ 3} On January 10, 2003, Fisher executed a general power of attorney declaring his daughter, Mrs. Krupp, to be his attorney-in-fact. Fisher and Mrs. Krupp signed the document, and Mrs. Krupp's attorney, Thomas Luettke, signed it as a witness. Luettke also notarized the document, affixing his seal directly beneath these signatures. However, only Mrs. Krupp's name appeared in the acknowledgment clause, while Fisher's name did not. This power of attorney was not filed in Lucas County until November 2, 2005.

{¶ 4} Two months after the power of attorney was executed, Mrs. Krupp initiated guardianship proceedings in the Wood County Probate Court and, along with Fisher Jr., was appointed as a coguardian of Fisher. As part of the order granting guardianship, the court required that "[f]unds being held in the name of [Fisher] shall not be released to Guardian without a Court order directing release of a specific fund and amounts thereof."

{¶ 5} Shortly after the guardianship proceedings, Fisher, Mrs. Krupp, and her family—consisting of her husband, David Krupp, and their three children—moved into Fisher's home in Oregon, Ohio. In order to provide better care for Fisher, Mrs. Krupp requested that the Wood County Probate Court grant her permission to borrow $40,000 against the value of the home to make it handicapped-accessible. After an investigation, the probate court ordered that the amount could be borrowed and that Mrs. Krupp would make the monthly mortgage payments on the $40,000 loan as rent for living in the home. Mrs. Krupp then requested that the court allow her to be added to the deed for the purpose of being able to obtain the loan. The court granted this request on August 11, 2003, and authorized the coguardians to make a new deed naming both Fisher and Mrs. Krupp as owners of the real estate in fee simple absolute. Mrs. Krupp did obtain a $40,000 mortgage on the property; however, the new deed naming her as an owner was not executed at that time.

{¶ 6} Subsequently, four additional loan transactions were executed with respect to Fisher's property, all of which occurred after he was adjudged incompetent, and none of which were approved by the Wood County Probate Court. The first was a September 30, 2004 mortgage for $114,000 purporting to have been signed by Fisher himself despite his incompetency. The second was a June 22, 2005 home-equity mortgage loan for $31,700 through M & I Bank FSB. Concurrently with this second mortgage, a new deed was executed granting Fisher's interest in the property to Fisher, and Mrs. Krupp and Mr. Krupp as joint tenants with rights of survivorship. Mrs. Krupp signed this quitclaim deed "William W. Fisher" as grantor, without making any notation that she was signing as his attorney-in-fact or guardian. In the same manner, Mrs. Krupp also signed the June 22, 2005 mortgage "William W. Fisher." In addition, Mrs. Krupp and Mr. Krupp signed this loan on their own behalf.

{¶ 7} The third and fourth mortgage transactions, executed on October 24, 2005, through defendant-appellant/cross-appellee Aames Funding Corporation, were for $135,000 and $45,000 and were for the purpose of refinancing the previous loans. Mrs. Krupp was the only person to sign these mortgages, signing on her own behalf and for Mr. Krupp and Fisher as their attorney-in-fact. In connection with the these mortgages, defendant/cross-appellee Old Republic National Title Insurance Company issued two mortgagee-loan insurance policies to Aames Funding. The loan policies were solely between Old Republic and Aames Funding—no contractual relationship existed between Old Republic and Fisher, Mrs. Krupp, or Mr. Krupp.

{¶ 8} Fisher passed away on December 7, 2005. On April 6, 2006, Campbell, individually and as the executor of the estate of Fisher, filed a complaint to quiet title to Fisher's property in favor of his estate. Campbell then filed a motion for

summary judgment on December 14, 2007, which Aames Funding opposed. Before the court issued a judgment, Campbell voluntarily dismissed the complaint on April 1, 2008, reserving the right to refile and incorporate all previous pleadings. She subsequently refiled on July 3, 2008, and amended her complaint on November 24, 2008. The amended complaint sought to quiet title to the property in Fisher's estate and alternatively added a request for compensatory damages in the amount of $180,000 against Mrs. Krupp, Aames Funding, and Old Republic for alleged negligence that allowed Mrs. Krupp to obtain these mortgages. The amended complaint also added a request for $540,000 in punitive damages against Mrs. Krupp, Aames Funding, and Old Republic for their allegedly reckless and malicious acts.

{¶ 9} After the filing of the amended complaint, Campbell moved for a decision on her motion for summary judgment that she had filed before the voluntary dismissal. This earlier motion included an argument seeking compensatory and punitive damages, which she did not request in her initial 2006 complaint, but which she included in the November 24, 2008 amended complaint. In an order journalized on July 13, 2010, the trial court granted Campbell's motion for summary judgment, quieting title to the property in favor of the Fisher estate and against any interests claimed by Aames Funding, Mrs. Krupp, or Mr. Krupp. In its order, however, the trial court denied Campbell's motion for summary judgment as to the claims for compensatory and punitive damages.

{¶ 10} Old Republic, on the other hand, moved for summary judgment on Campbell's second and third causes of action, which pertained to the compensatory and punitive damages respectively. In a separate order also journalized on July 13, 2010, the trial court granted this motion, thereby dismissing these claims against Old Republic.

{¶ 11} Aames Funding now appeals from the judgment that quieted title to the property in favor of Fisher's estate and declared that Aames Funding's mortgage interests are "void and/or invalid." Campbell is cross-appealing from the judgment dismissing the second and third causes of action against Old Republic and from the denial of her motion for summary judgment as to the claims for compensatory and punitive damages. We will address Campbell's cross-appeal first.

{¶ 12} An appellate court reviews the trial court's grant of summary judgment de novo. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Applying Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving

party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

*Campbell's Cross–Appeal*

{¶ 13} On cross-appeal, Campbell raises the following two assignments of error, which we will address in reverse order. In her second assignment of error, Campbell argues:

{¶ 14} "The trial court erred in granting Old Republic National Title Insurance Company's motion for summary judgment finding that they could not be sued in tort for their reckless title search that led to mortgages being awarded to Penny Krupp."

{¶ 15} In her amended complaint, Campbell presented two causes of action against Old Republic. The first alleged that Old Republic was negligent in performing the title search that was used in the Aames Funding mortgage transactions. The second alleged that Old Republic's conduct in performing the title search was reckless and intentionally done with "conscious disregard for the great and obvious harm that was caused to [Fisher]." As acknowledged by the parties, these causes of action sound in tort, not in contract. Old Republic argued in the trial court, and now argues on appeal in response to Campbell, that the economic-loss rule bars these tort claims.

{¶ 16} The economic-loss rule "generally prevents recovery in tort of damages for purely economic loss. * * * ' "[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." ' " (Citations omitted.) *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6. The rule stems from a "balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.' " (Citation omitted.) *Id.* " ' "Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.' " (Citations omitted.) *Id.* Thus, where a plaintiff has suffered only economic harm as a result of a defendant's breach of duty, the economic-loss rule will bar the tort claim if the duty arose only by contract. In that case, the plaintiff's remedy would be in contract law, which requires privity of contract between the parties. In contrast, the economic-loss rule does not apply—and the plaintiff who suffered only economic damages can proceed in tort—if the defendant breached a duty that did not arise solely from a contract.

{¶ 17} In *Corporex,* the Ohio Supreme Court illustrated this difference by distinguishing the case before it from its earlier decision in *Haddon View Invest.*

*Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. In *Haddon View,* limited partners individually sued the accounting firm that did work for the general partner and for the partnership. The complaint alleged professional malpractice in the performance of accounting services for the limited partnership. Despite the lack of privity of contract between the limited partners and the accounting firm, the Supreme Court held that "an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." Id. at 157.

{¶ 18} In *Haddon View,* the Supreme Court noted that the duty the accounting firm breached was imposed, and therefore, it was " 'not necessary to state the duty in terms of contract or privity.' " Id. at 156, quoting *White v. Guarente* (1977), 43 N.Y.2d 356, 361–362, 401 N.Y.S.2d 474, 372 N.E.2d 315. Specifically, the court cited 3 Restatement of Torts 2d (1977), 126–127 Section 552, which provides:

{¶ 19} "(1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

{¶ 20} "(2) * * * [T]he liability stated in Subsection (1) is limited to [the] loss suffered

{¶ 21} "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

{¶ 22} "(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

{¶ 23} After identifying the "modern verity that accountants make reports on which people other than their clients foreseeably rely in the ordinary course of business," the court stated that "the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes." *Haddon View,* 70 Ohio St.2d at 157, 24 O.O.3d 268, 436 N.E.2d 212.

{¶ 24} In contrast, in Corporex, the defendant did not have a similar duty; rather its duties arose solely from the terms of the contract. *Corporex* involved a plaintiff who contracted with a company for the construction of a hotel. *Corporex,* 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 3. The main contractor then hired a subcontractor, Shook, to do all the cement work. The plaintiff had no direct contract with Shook. Upon Shook's failure to perform, the plaintiff

sued Shook directly, alleging negligence and breach of implied warranty, seeking purely economic damages caused by Shook's alleged failure to perform under the subcontract. The plaintiff relied on the holding of *Haddon View*, arguing that because Shook knew that the plaintiff was the ultimate beneficiary of the work, the plaintiff was thus "specifically foreseeable" and therefore Shook should be liable in tort for purely economic damages. Id. at ¶ 7. The Ohio Supreme Court, however, distinguished *Haddon View* on the basis that it involved the tort that exists when "a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business." Id. at ¶ 9. The court stated that "[l]iability in *Haddon View* was based exclusively upon this discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity." Id. Thus, because the plaintiff in *Corporex* failed to claim a breach of any duty imposed by law and instead "merely allege[d] breach of contractually created duties owed by Shook," the court held that the plaintiff was barred from bringing the claims of negligence and breach of implied warranty. Id. at ¶ 14.

{¶ 25} In light of *Haddon View* and *Corporex*, the issue then is whether Old Republic owed any duties to Fisher that were imposed by law instead of by contract. Campbell puts forth two causes of action, one based on negligence and the other based on an intentional tort. As to the cause of action for negligence, over 100 years ago the Ohio Supreme Court affirmatively announced that "[a]n action against an abstracter to recover damages for negligence in making or certifying an abstract of title does not sound in tort, but must be founded on contract; and the general rule is that an abstracter can be held liable for such negligence only to the person who employed him." *Thomas v. Guarantee Title & Trust Co.* (1910), 81 Ohio St. 432, 91 N.E. 183, paragraph one of the syllabus.

{¶ 26} Campbell argues that *Haddon View* has eroded the holding in *Thomas v. Guarantee Title* by recognizing a tort, in the context of accounting, in which a person negligently supplies false information knowing that the recipient or foreseeable third-party recipient intends to rely on the information. She argues in her opposition to Old Republic's motion for summary judgment that the same reasoning should apply to the present case. However, the Ohio Supreme Court has not overruled *Thomas v. Guarantee Title* by recognizing a similar tort in the title-abstracter context.

{¶ 27} Further, our sister appellate courts that have examined similar issues have held that *Thomas v. Guarantee Title* is still controlling and have declined to allow plaintiffs to pursue tort claims against title abstracters absent privity of contract. See, e.g., *Kenney v. Henry Fischer Builder, Inc.* (1998), 129

Ohio App.3d 27, 716 N.E.2d 1189 (a purchaser of a lot could not bring a tort claim against the lender's title insurance company even though the purchaser paid for its services); *Valentine v. Willard & Assoc. Title Search Servs.* (June 22, 2001), 5th Dist. No. 01–CA–15, 2001 WL 733414, (sellers could not recover in tort from purchasers' title-search agency for its failure to discover gas and mineral reservations held by a third party); *Cedar Dev., Inc. v. Exchange Place Title Agency, Inc.* (2002), 149 Ohio App.3d 588, 778 N.E.2d 136. Accordingly, we join our sister courts in adhering to the rule set forth in *Thomas v. Guarantee Title* and hold that Campbell's claim against Old Republic must fail because no cause of action outside of contract exists against a title abstracter for negligence.

{¶ 28} As to the cause of action based on intentional tort, Campbell essentially argues that a material issue of fact exists as to whether Old Republic acted with actual or constructive knowledge of Mrs. Krupp's alleged fraud and therefore participated in the scheme to swindle Fisher out of the equity in his home. "[T]here is no question that privity is not required to assert a claim of common law fraud, out of a concern that an innocent party should not suffer at the hands of an intentional wrongdoer." *Haddon View*, 70 Ohio St.2d at 158, 24 O.O.3d 268, 436 N.E.2d 212.

{¶ 29} To support her claim, Campbell relies solely on the premise that Old Republic inspected the power-of-attorney document and the June 22, 2005 quitclaim deed and thus was arguably on notice that Mrs. Krupp was attempting to steal the value of the home from Fisher. Campbell, however, has presented no facts showing that Old Republic had knowledge of the power of attorney. The Aames Funding mortgages were executed on October 24, 2005, but the power of attorney was not recorded until a week later on November 2, 2005. Thus, any title search conducted by Old Republic regarding this transaction would not have disclosed the power of attorney. Consequently, for Old Republic to have knowledge of the power of attorney, one of its representatives must have been present when Mrs. Krupp signed the loan documents—a fact that is not supported by any evidence put forth by Campbell or by the only deposition testimony in this case, that of Mrs. Krupp. Therefore, because no evidence exists to show that Old Republic had actual or constructive notice of Mrs. Krupp's alleged fraud, Campbell's intentional-tort claim against Old Republic must fail.

{¶ 30} Campbell next argues that she is able to recover under contract law. The parties do not contend that an actual contract exists between Fisher and Old Republic. Consequently, Campbell must demonstrate a nexus that can substitute for contractual privity, to thereby allow her to sue in contract. See *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 8, 560 N.E.2d 206; *Corporex*, 106 Ohio St.3d 412, 2005-Ohio-5409,

835 N.E.2d 701, ¶ 10. Campbell argues that the consumer is in privity with the title company because in the title-search industry, the consumer is the one who pays for, and ultimately benefits from, the title search. However, Mrs. Krupp, not Fisher, was the consumer who paid for the services and was the one who the parties contemplated would benefit from the services. Thus, since Campbell has failed to establish that a sufficient nexus exists between Fisher and Old Republic, she cannot bring a claim on Fisher's behalf in contract against Old Republic.

{¶ 31} Therefore, because Campbell has failed to demonstrate that Old Republic is liable to Fisher either in tort or in contract, summary judgment in favor of Old Republic is appropriate. Accordingly, Campbell's second assignment of error is not well taken.

{¶ 32} As to Campbell's first assignment of error, she argues:

{¶ 33} "The trial court erred in denying Dorothy Campbell's motion for summary judgment in regard to her claim for compensatory and punitive monetary damages."

{¶ 34} Campbell specifically alleges that the trial court erred in denying summary judgment in her favor on the claims of compensatory and punitive damages against Aames and Mrs. Krupp.[1] "[A]n order must be final before it can be reviewed by an appellate court." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 20, 540 N.E.2d 266. The well-settled rule in Ohio is that the denial of a motion for summary judgment is not a final and appealable order, because it does not determine the outcome of the case. *Duhart v. Lawson* (2010), 186 Ohio App.3d 363, 2010-Ohio-937, 928 N.E.2d 459, ¶ 24. Further, the trial court's inclusion of the Civ.R. 54(B) language, as was done in this case, does not convert a nonfinal order into one that the parties can immediately appeal. Id. Therefore, Campbell's first assignment of error is not well taken, because the trial court's denial of summary judgment on the two damage claims against Aames Funding and Mrs. Krupp does not constitute a final and appealable order.

{¶ 35} This conclusion does not, however, mean that the other portion of the July 13, 2010 order quieting title in favor of Fisher's estate is not final and appealable. In a case involving multiple claims and multiple parties, an order is final and appealable if it disposes of at least one full claim by one party against another and includes an express determination that "there is no just reason for delay" pursuant to Civ.R. 54(B). *Horner v. Toledo Hosp.* (1993), 94 Ohio App.3d 282, 288, 640 N.E.2d 857. Here, the trial court's order disposed of Campbell's

---

1. In contrast, the same claims were dismissed against Old Republic in a separate judgment entry, which is discussed above as the subject of Campbell's second assignment of error.

cause of action to quiet title and included the appropriate Civ.R. 54(B) language that there was no just reason for delay. As a result, that portion of the order quieting title is final and appealable, and we will now consider Aames Funding's appeal from it.

*Aames Funding's First Assignment of Error*

{¶ 36} Aames Funding raises three assignments of error, the first of which is "The trial court erred in finding that the January 10, 2003 general power of attorney with durable provision designating Penny Krupp as Mr. Fisher's attorney in fact was void."

{¶ 37} In addressing this assignment of error, we are asked to determine whether the January 10, 2003 power of attorney is invalid because of a defect in the notary's acknowledgment clause. The acknowledgment clause states: "On January 10, 2003 before me, *Penny M. Krupp,* appeared to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument." (Italics indicate that "Penny M. Krupp" was handwritten.) The particular defect in this clause is that it does not mention Fisher, who is the grantor of the power of attorney. Aames Funding argues that because Luettke acted as both a witness and a notary to the document, it is reasonable to conclude that he notarized Fisher's signature despite this defect. We disagree.

{¶ 38} In Ohio, "[a] power of attorney for the conveyance, mortgage, or lease of any interest in real property shall be signed, acknowledged, and certified as provided in section 5301.01 of the Revised Code." R.C. 1337.01. In turn, R.C. 5301.01(A) provides: "A deed, mortgage, land contract * * *, or lease of any interest in real property * * * shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease * * *. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, * * * before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

{¶ 39} R.C. 5301.01(A) contains four requirements: (1) that the grantor sign the document, (2) that the grantor acknowledge the document to the notary public, (3) that the notary public certify the acknowledgment, and (4) that the notary public subscribe his name to the certificate of acknowledgment. Here, the parties do not dispute that Fisher signed the document, nor do they dispute that

Luettke subscribed his name to the certificate of acknowledgment. Thus, the issues we must resolve are whether Fisher acknowledged the document to Luettke and whether Luettke certified that acknowledgment.

{¶ 40} In *Wayne Bldg. & Loan Co. v. Hoover* (1967), 12 Ohio St.2d 62, 65, 41 O.O.2d 279, 231 N.E.2d 873, the Ohio Supreme Court addressed whether merely signing the document in the presence of a notary public satisfied the acknowledgment requirement of R.C. 5301.01. The court held that "in the absence of some evidence to the contrary, one who signs his signature to a document in the presence of another thereby acknowledges his signing thereof to such other." Id. at 66. In this case, Aames Funding presented evidence, through the deposition testimony of Mrs. Krupp, that Luettke personally witnessed Fisher signing the document. Further, Campbell presented no evidence demonstrating that Fisher did not sign the document in Luettke's presence or that Fisher did not acknowledge the document. Therefore, when viewing the facts in the light most favorable to Aames Funding, we must rely on the self-serving testimony of Mrs. Krupp and conclude that Fisher acknowledged the document to Luettke.

{¶ 41} Nevertheless, we hold that the power of attorney is invalid because Luettke failed to certify Fisher's acknowledgment. Defects in notarial acknowledgment clauses have generated case law in Ohio dating back to the mid–19th century. In *Smith's Lessee v. Hunt* (1844), 13 Ohio 260, 268–269, the Ohio Supreme Court held that a mortgage was ineffective where the notary's acknowledgment clause omitted the name of the sole grantor. The acknowledgment clause in *Smith's Lessee* stated, "Personally appeared _____, who acknowledged that he did sign and seal the foregoing instrument, and that the same is his free act and deed." The court held that "_____" ("blank") could not be considered synonymous with the grantor, "Folsom," and thus the acknowledgment clause did not provide any evidence that the officer certified Folsom's acknowledgment.

{¶ 42} Forty years later, the Ohio Supreme Court was again faced with a defective acknowledgment clause; but, contrary to *Smith's Lessee,* the court held that the defect did not invalidate the mortgage. In *Dodd v. Bartholomew* (1886), 44 Ohio St. 171, 5 N.E. 866, the true names of the grantors of the mortgage were "Charles A. Clark" and "Sarah Clark." The signatures on the mortgage matched their true names. The acknowledgment clause stated that "the above-named grantors" acknowledged the signing; but the clause identified the grantors as "Charles B. Clark" and "Mary Clark." In addressing whether the mortgage was valid, the court distinguished between issues involving the execution of a document, and issues involving the construction of the instrument, stating: "The question presented here is very different from that where an error occurs in the

execution of the instrument. The formalities as to the execution are prescribed by statute, and cannot be dispensed with. To be a valid instrument, as against third persons, a mortgage must be signed, sealed, and acknowledged as required by statute. But the form of the instrument is not so prescribed. The form and requisite certainty of it is left to the general rules of law." Id. at 176–177.

{¶ 43} Thus, the court in *Dodd* viewed the "mistake of the scrivener" in describing the names in the acknowledgment clause as being an issue of construction, rather than a failure to adhere to the formalities of execution. Indeed, the court distinguished the case before it from other cases involving failures of execution, such as where there was only one witness, where there was no seal, or, in the case of *Smith's Lessee*, where "the name of the grantor was left blank in the certificate of acknowledgment, and did not, as in this case, refer to him as the above-named grantor." Id. at 177. To resolve the mistake, the court relied on the principle, "applicable to the *construction* of deeds," that "a false description, whether of the subject-matter or of the parties, does not vitiate the instrument, where the error appears upon its face, and the instrument supplies within itself the means of making the correction." (Emphasis added.) Id. at 175–176. Applying this principle, the court concluded that because no doubt existed that "Charles A. Clark" and "Sarah Clark" were the grantors in the deed, any errors in their names in the acknowledgment clause were "corrected by their signatures to it." Id. at 176.

{¶ 44} In light of *Smith's Lessee* and *Dodd*, we must determine whether the omission of Fisher's name from the acknowledgment clause is a failure to adhere to the formalities of execution, thereby invalidating the power of attorney, or whether it is merely an issue of construction susceptible of correction. Recent courts have framed this issue in terms of whether the certificate of acknowledgment "substantially complies" with the statutory requirements. If the acknowledgment clause does not substantially comply with the statutory requirements, then, as in *Smith's Lessee*, the instrument is invalid. On the other hand, if the acknowledgment clause substantially complies, then, as in *Dodd*, the rules of construction are available to validate the instrument. A close reading of the cases shows that certificates of acknowledgment substantially comply when they in some way identify the person making the acknowledgment.

{¶ 45} In *Mid–American Natl. Bank & Trust v. Gymnastics Internatl., Inc.* (1982), 6 Ohio App.3d 11, 12, 6 OBR 34, 451 N.E.2d 1243, this court was asked whether an acknowledgment clause that identified the mortgagor corporation, instead of the individual signers, substantially complied with the requirements of R.C. 5301.01. The acknowledgment clause in *Mid–American* stated, " 'Before me * * * personally appeared the above named grantors and mortgagors, Gymnas-

tics International Inc., an Ohio Corporation, and acknowledged the signing and sealing of the foregoing conveyance to be their voluntary act and deed, for the uses and purposes therein expressed.' " Id. In fact, the mortgage was signed by the corporation's president and its secretary-treasurer. This court held that the acknowledgment clause substantially complied with R.C. 5301.01, stating, "It is apparent from the face of the instrument that 'the above named * * * mortgagors, Gymnastics International Inc.' appeared through its officers, the president and secretary-treasurer." See also *Citifinancial, Inc. v. Howard,* 3d Dist. No. 6–08–08, 2008-Ohio-4648, 2008 WL 4193051 (a mortgage is in substantial compliance where the mortgagor signs in his individual capacity, but the acknowledgment clause named the individual in his corporate capacity).

{¶ 46} In a later case, the Third District Court of Appeals held that an acknowledgment clause that contained the name of the mortgagee bank instead of the mortgagor substantially complied with the requirements of formality. *Admr. of Veterans Affairs v. City Loan Co.* (May 7, 1985), 3d Dist. No. 17–83–12, 1985 WL 9128. In *Veterans Affairs,* the mortgage document properly indicated that Betty S. Weber was the mortgagor and that the City Loan Company was the mortgagee. However, the acknowledgment clause stated: " 'Before me * * * personally appeared the above named mortgagor(s) <u>The City Loan Company</u> who acknowledged that (<u>he</u>) (<u>she</u>) (<u>they</u>) did sign the foregoing instrument, and that the same is (<u>his</u>) (<u>her</u>) (<u>their</u>) free act and deed * * *.' " Id. In reaching its decision, the court relied on the holdings of *Dodd* and *Mid–American,* and concluded that the printing of the mortgagee's name on the line for the mortgagor was a mistake. The court further concluded that it was "obvious from the face of the mortgage that Weber was the mortgagor" and therefore held that the document substantially complied with R.C. 5301.01. Id.

{¶ 47} In contrast, in *Fifth Third Bank v. Farrell,* 5th Dist. No. 09–CAE–11–0095, 2010-Ohio-4839, 2010 WL 3852223, the court held that an acknowledgment clause that was left blank did not substantially comply with R.C. 5301.01. The acknowledgment clause in *Fifth Third Bank* read, " 'This instrument was acknowledged before me this *18th of March, 2004,* by _____.' " (Emphasis sic.) Id. at ¶ 5. It did not make any reference to Michael Farrell, the person acknowledging. In its analysis, the court recognized that the case law " 'requires identification of the mortgagor within the acknowledgment clause or sufficient information within the acknowledgment clause so that the person whose signature was acknowledged can be identified through a review of the remainder of the mortgage.' " Id. at ¶ 54, quoting *In re Burns* (Bankr.S.D.Ohio 2010), 435 B.R. 503. The court thus held: "While the doctrine of substantial compliance allows the court to consider the totality of the mortgage documents to determine if the acknowledgment was valid, including an affidavit from the notary public, the

cases cited show that there was some information about the mortgagor, albeit incorrect, within the acknowledgement clause itself to allow the finding of 'substantial' compliance. In the present case, there is no such information relating to Michael Farrell in the acknowledgement clause. It is blank. As such, we find that the affidavit of the notary public does not create a genuine issue of material fact so as to abrogate our finding that *Smith's Lessee* controls the disposition of the matter." Id. at ¶ 56.

{¶ 48} Applying these cases to the present situation, we hold that because no information exists in the acknowledgment clause that could identify Fisher as the person acknowledging the instrument, the power of attorney fails to substantially comply with the requirements of R.C. 5301.01 and is invalid. Unlike the acknowledgement clauses in *Smith's Lessee* and *Fifth Third Bank*, the acknowledgment clause is not completely blank; rather, it contains the handwritten name of Penny M. Krupp. However, we do not think that this fact is sufficient to analogize the present case to *Dodd, Mid–American,* and *Veterans Affairs*. In those cases, the acknowledgment clause declared that the notary was certifying the acknowledgment of "the above named grantor." Thus, even though the name of the grantor was wrong in the acknowledgment clause, reference could still be made within the document to ascertain the true identity of the person acknowledging the instrument. In contrast, here the acknowledgment clause refers only to Penny M. Krupp. It does not state that "the above named grantor" acknowledged the document, nor does it even use plural pronouns to show that there was more than one person acknowledging. Compare *In re Wahl* (Bankr.S.D.Ohio 2009), 407 B.R. 883 (an acknowledgment clause does not substantially comply if it contains the name of only one of the two grantors, does not say "the above named grantor(s)," and does not use plural pronouns or language), with *In re Fryman* (Bankr.S.D.Ohio 2004), 314 B.R. 137 (an acknowledgment clause substantially complied when it contained only one of the grantors' names but included the handwritten pronouns "they" and "their").

{¶ 49} Aames argues that because Luettke acted as both a notary and a witness, a genuine issue of material fact exists as to whether the document was certified as required by R.C. 5301.01. Certainly, if the acknowledgment clause substantially complied with the formality requirements, an affidavit or some other deposition testimony from Luettke would be important in determining the proper construction of the certification clause. However, as discussed above, for the acknowledgment clause to substantially comply, there must be some language within the clause itself that identifies the grantor as the person acknowledging the document. Thus, the fact that Luettke was both a notary and a witness, of itself, has no bearing on whether the certificate of acknowledgment substantially complies with R.C. 5301.01. Thus, we hold that the reasoning of *Smith's Lessee*

controls, and the power of attorney is invalid. Accordingly, Aames Funding's first assignment of error is not well taken.

*Aames Funding's Second Assignment of Error*

{¶ 50} Aames Funding asserts as its second assignment of error, "The trial court erred in failing to reform the power of attorney and the Ames [sic] mortgages." In support of this assignment of error, Aames Funding argues that the trial court should have used its powers, either under R.C. 2719.01 or in equity, to reform the power-of-attorney document to correct the technical defect of Luettke's failure to certify Fisher's acknowledgment. By its own admission, Aames Funding's case relies on the effectiveness of the power of attorney to support the validity of its mortgage interest in Fisher's property, arguing that even if the June 22, 2005 deed conveying partial title to Mrs. Krupp were invalid, the mortgages would still be effective because Mrs. Krupp, as an attorney-in-fact, had full authority to encumber the property on Fisher's behalf.

{¶ 51} R.C. 2719.01 provides, "When there is an omission, defect, or error in an instrument in writing or in a proceeding by reason of the inadvertence of an officer, or of a party, person, or body corporate, so that it is not in strict conformity with the laws of this state, the courts of this state may give full effect to such instrument or proceeding, according to the true, manifest intention of the parties thereto." Here, Aames Funding contends that Mrs. Krupp and Fisher clearly intended for the power of attorney to be valid by the simple fact that the instrument was prepared, signed, and notarized. Therefore, Aames Funding asked the trial court to give effect to the intent of both Fisher and Mrs. Krupp by ignoring the requirement of R.C. 5301.01 that the notary public must certify the acknowledgment.

{¶ 52} The Supreme Court of Ohio addressed a nearly identical argument in *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194. In *Delfino*, the parties entered into a lease agreement, but the execution of the lease instrument did not comply with the formal requirements of R.C. 5301.01. The lessor argued that R.C. 2719.01 cured the defects in the execution and thus validated the lease. However, the court disagreed, stating:

{¶ 53} "Appellant places too broad an interpretation on [R.C. 2719.01]. To follow appellant's argument would result in rendering completely nugatory the provisions of [R.C. 5301.01], requiring that certain formalities must attend the execution of instruments transferring an interest in property. Substantially, parties could say: 'We don't care what the law requires in relation to transfers of real property. [R.C. 2719.01] will make any instrument we execute valid.' To follow this theory, any scrap of paper, no matter how informal, would constitute a deed or lease." Id. at 285.

{¶ 54} Therefore, pursuant to *Delfino*, reformation under R.C. 2719.01 is not available to cure the power of attorney's defect in that it failed to comply with the statutory formalities of R.C. 5301.01.

{¶ 55} Similarly, reformation of the power of attorney is not available under the court's equitable powers. The purpose of equitable reformation is to bring a valid instrument into accord with the intent of the parties. *Delfino*, 2 Ohio St.2d at 286, 31 O.O.2d 557, 209 N.E.2d 194, citing 47 Ohio Jurisprudence 2d 120, Reformation of Instruments, Section 2. However, "[w]here a statute requires certain formalities for the execution of an instrument, reformation cannot be granted to supply these formalities. * * * 'Reform' does not connote 'create.'" Id. "[A] court of equity under its power of reformation cannot validate or give life to an invalid instrument." *Mtge. Electronic Registration Sys. v. Odita* (2004), 159 Ohio App.3d 1, 2004-Ohio-5546, 822 N.E.2d 821, ¶ 24; see also *Delfino*, 2 Ohio St.2d at 286, 31 O.O.2d 557, 209 N.E.2d 194. In this case, we have determined that the power of attorney is invalid for want of a certificate of acknowledgment. Thus, the trial court could not have reformed the instrument to make it valid by excusing that formality.

{¶ 56} In addition to arguing for reformation of the power-of-attorney document, Aames Funding also contends that the trial court should have reformed the mortgages to the extent necessary to declare them valid. However, as previously stated, reformation is not available to validate an invalid instrument. In order for the Aames Funding mortgages executed by Mrs. Krupp to be valid, she must have had some interest either legal or equitable in the property. See *Ins. Co. of N. Am. v. First Natl. Bank of Cincinnati* (1981), 3 Ohio App.3d 226, 228, 3 OBR 257, 444 N.E.2d 456 (when a mortgagor does not have legal or equitable title to the property, a subsequent mortgage on the property "is a nullity and is of no legal consequence"). Thus, either the power of attorney must be effective, thereby allowing Mrs. Krupp to execute the mortgages on behalf of Fisher, or the June 22, 2005 quitclaim deed must be effective, thereby entitling her to encumber the property as an owner. As discussed above, the power of attorney is invalid and not susceptible of reform and has no efficacy with respect to the mortgages. Therefore, the validity of Aames Funding's mortgages turns on the effectiveness of the quitclaim deed.

{¶ 57} The parties do not dispute that Mrs. Krupp signed the June 22, 2005 quitclaim deed in the name of "William W. Fisher" without making any indication that she was signing as his guardian or attorney-in-fact. According to the deposition testimony of Mrs. Krupp, she believed that she was signing Fisher's name as his attorney-in-fact. However, as discussed above, the power of attorney failed to comply with the statutory requirements for the conveyance of title to real property. Mrs. Krupp had no legal authority to sign Fisher's name

for this purpose; therefore, the deed is void because it was not signed by the grantor.

{¶ 58} In addition, although the parties only tangentially argue the issue, we think that a full adjudication of the case requires us to address whether the Wood County Probate Court's August 11, 2003 order allowing the coguardians to execute a new deed validates the June 22, 2005 quitclaim deed. We determine that it does not.

{¶ 59} On August 5, 2003, Mrs. Krupp and Fisher Jr. filed a motion with the probate court requesting permission to execute a new deed that would add Mrs. Krupp as a 50 percent owner. The purpose of this action was to enable Mrs. Krupp to obtain financing for the $40,000 that the court already approved to renovate the property to make it more accessible to Fisher. On August 11, 2003, the probate court granted the motion and authorized the parties to execute a new deed naming Fisher and Mrs. Krupp as owners of the real estate in fee simple absolute. Despite this authorization, no new deed was executed in conjunction with the $40,000 mortgage. Instead, nearly two years later, a new deed—naming Fisher and Mrs. Krupp and Mr. Krupp as joint tenants with rights of survivorship—was executed in connection with a mortgage that was not authorized by the probate court and that violated the court's order that no funds were to be distributed from the estate without its approval.

{¶ 60} R.C. 2111.50(A)(1) states, "At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships." Further, R.C. 2111.14(D) provides that every guardian shall "obey all orders and judgments of the courts touching the guardianship."

{¶ 61} Here, Mrs. Krupp's execution of the June 22, 2005 quitclaim deed violated the court's orders in two respects. First, by adding Mr. Krupp to the quitclaim deed, it violated the order that had authorized a new deed in the names of Fisher and Mrs. Krupp only. Second, the quitclaim deed was executed for the purpose of obtaining a mortgage in contravention of the court's order not to distribute any funds without prior authorization. Consequently, we conclude that because Mrs. Krupp directly violated the orders of the probate court, those orders cannot be relied on to save what was otherwise an invalidly executed deed. Mrs. Krupp had no legal or equitable interest in the property, and as a result, the mortgages in favor of Aames Funding were a nullity. Therefore, pursuant to the principles articulated in *Delfino,* the trial court could not have given life to the mortgages through its power of reformation, either in equity or under R.C. 2917.01. *Delfino,* 2 Ohio St.2d at 285–286, 31 O.O.2d 557, 209 N.E.2d 194. Accordingly, Aames Funding's second assignment of error is not well taken.

*Aames Funding's Third Assignment of Error*

{¶ 62} Finally, Aames Funding raises the following as its third assignment of error: "At a minimum, the Ames [sic] mortgages should be granted equitable lien status and/or be subrogated to the extent of the mortgages which the Ames [sic] mortgages paid off."

{¶ 63} Aames Funding did not raise the issue of equitable subrogation in the trial court, and thus we will not consider it on appeal. See *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706, quoting *Goldberg v. Indus. Comm.* (1936), 131 Ohio St. 399, 404, 3 N.E.2d 364 (" 'Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed' ").

{¶ 64} Arguing that it should be granted equitable-lien status, Aames Funding maintains that genuine issues of material fact exist as to the good faith of Mrs. Krupp and Aames Funding in executing the mortgage transactions. Aames Funding's theory is that Mrs. Krupp acted in good faith in obtaining the mortgages and that Aames Funding had no notice that anything was wrong with the deed transferring title or that Fisher had been placed under a guardianship. Therefore, because Mrs. Krupp believed that what she was doing was legitimate, and because Aames Funding had no reason to suspect otherwise, Aames Funding should be entitled to an equitable lien on the property.

{¶ 65} "An equitable lien is a right, not acknowledged in law, to have a fund, or specific property, or its proceeds, applied, in whole or in part to the payment of a particular debt or class of debts. It is merely a charge on property for the purpose of security and is ancillary to and separate from the debt itself." 66 Ohio Jurisprudence 3d (2011), Liens, Section 16. An equitable lien arises from either "(1) a written agreement indicating an intent to make a particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Katz v. Banning* (1992), 84 Ohio App.3d 543, 551, 617 N.E.2d 729, citing *Syring v. Sartorious* (1971), 28 Ohio App.2d 308, 311, 57 O.O.2d 477, 277 N.E.2d 457. In determining whether an equitable lien is appropriate, we first note that the parties that would be affected by the lien are Fisher's estate and Aames Funding. Thus, the relative equities should take into consideration the actions of Fisher and Aames Funding, not those of Mrs. Krupp.

{¶ 66} Here, the first basis for imposing an equitable lien—that a written agreement exists between the parties indicating an intent to make the property a security for a debt or obligation—fails because no agreement existed between

Aames Funding and Fisher. Rather, the agreement was between Aames Funding and Mrs. Krupp.

{¶ 67} Regarding the second basis for granting an equitable lien, and the one on which Aames Funding seems to rely, we hold that as a matter of law, the relations of the parties and the circumstances of the mortgage transactions militate against imposing an equitable lien. The undisputed facts demonstrate that Fisher was an innocent party. Prior to any of the events that gave rise to these proceedings, Fisher owned the property free of any encumbrances. It was only after the trial court declared him incompetent that Mrs. Krupp began taking out the loans. Aames Funding counters by arguing that Fisher himself signed a mortgage for $114,000 on September 30, 2004, and therefore it should be granted an equitable lien at least in that amount. Campbell denies that Fisher signed this mortgage, but for the purpose of summary judgment, we must resolve any factual disputes in favor of Aames Funding. However, even if Fisher did sign the September 30, 2004 mortgage, this does not undermine the conclusion that he was an innocent party, because at the time of the signing, Fisher was legally incapable of entering into contracts. See *Witt v. Ward* (1989), 60 Ohio App.3d 21, 23, 573 N.E.2d 201 (appointment of a guardian is conclusive evidence that the ward is incompetent to enter into a binding contract or deed).

{¶ 68} Aames Funding, on the other hand, is not entirely innocent, even if it was acting in good faith. Aames Funding contends that it is an innocent party because it was simply refinancing two existing mortgages on the property in Lucas County and had no knowledge of the guardianship proceedings in Wood County. We accept as true the fact that Aames Funding had no knowledge of the guardianship proceedings, and we stop short of holding that Aames Funding had a duty to examine the records of surrounding counties when conducting a title search. Nonetheless, we hold that Aames Funding was on notice that further inquiry was required into the deed to the property, and Aames Funding's failure to conduct further inquiry prevents it, in equity, from being able to claim a lien over that property.

{¶ 69} The Ohio Supreme Court has defined "notice" as "knowledge of facts which would naturally lead an honest and prudent person to make inquiry." *Wayne Bldg. & Loan Co. of Wooster v. Yarborough* (1967), 11 Ohio St.2d 195, 202, 40 O.O.2d 182, 228 N.E.2d 841. Aames Funding relied on two documents when making the mortgage loans—the power of attorney that purportedly gave Mrs. Krupp the ability to sign on behalf of Fisher and the June 22, 2005 quitclaim deed that was recorded in Lucas County on July 21, 2005. Even a cursory examination of those two documents would reveal that the signature of Fisher varies greatly and that Fisher's signature on the quitclaim deed closely resembles Mrs. Krupp's signing of his name as attorney-in-fact on the Aames Funding loan

documents. In this way, Aames Funding was put on notice that additional inquiry was necessary as to the underlying circumstances surrounding the execution of the deed.

{¶ 70} Further, even if Aames Funding then understood that Mrs. Krupp signed Fisher's name on the quitclaim deed pursuant to the power of attorney, Aames Funding would have been put on notice that even more inquiry was necessary because the power of attorney was not filed prior to the recording of the quitclaim deed as required by R.C. 1337.04. ("A power of attorney for the conveyance, mortgage, or lease of an interest in real property must be recorded in the office of the county recorder of the county in which such property is situated, *previous to* the recording of a deed, mortgage, or lease by virtue of such power of attorney" [emphasis added] ). The fact that Aames should have been on notice of these potential title defects is further supported by the fact that an independent and subsequent title search revealed the differences in signatures, and the title company would only issue a guaranteed certificate of title subject to exceptions based on those signatures.

{¶ 71} Therefore, because Fisher is a completely innocent party, and because Aames Funding was, or should have been, on notice that the title had potential defects, but then failed to make further inquiry, the equities in this case do not support granting an equitable lien in favor of Aames Funding over the property. Accordingly, Aames Funding's third assignment of error is not well taken.

{¶ 72} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed, and the cause is remanded for consideration of Campbell's remaining claims for compensatory and punitive damages against Aames Funding and Mrs. Krupp. Pursuant to App.R. 24, costs of the appeal are assessed to appellant; costs of the cross-appeal are assessed to cross-appellant.

Judgment affirmed.

OSOWIK, P.J., and PIETRYKOWSKI, J., concur.