[Cite as *SMS Fin. XXVI, L.L.C. v. Waxman Chabad Ctr.*, 2021-Ohio-4174.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SMS FINANCIAL XXVI, L.L.C.,            :

    Plaintiff-Appellant,            :

                                  Nos. 110374 and 110376

    v.            :

THE WAXMAN CHABAD
CENTER, ET AL.,            :

    Defendants-Appellees.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 24, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-14-823254 and CV-16-859399

---

### *Appearances:*

McCarthy Lebit Crystal & Liffman Co., L.P.A., and David
M. Cuppage, *for appellant.*

Bloom Law Group, L.L.C., and Douglas E. Bloom, *for
appellees.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Plaintiff-appellant SMS Financial XXVI, L.L.C. ("SMS") appeals the trial court's determination in two cases in favor of defendants-appellees, The Waxman Chabad Center, the Chabad House of Cleveland, Melvin Waxman, Armond

Waxman, and the Esther and Stanley Waxman Community Mikvah, arising from actions in foreclosure.[1]  For the reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2}   The facts of this case involve a prior appeal, *SMS Fin. XXVI, L.L.C. v. Waxman Chabad Ctr.*, 8th Dist. Cuyahoga Nos. 106036 and 106037, 2018-Ohio-4851 ("*Waxman Chabad I*").  In 2001, Melvin and Martha Waxman transferred ownership of certain real property located in Beachwood, Ohio, to Chabad House/Waxman.[2]  In 2003, Chabad House/Waxman obtained a $1.6 million loan from Provident Bank, evidenced by a promissory note ("2003 Note") and secured by an open-end mortgage.

{¶ 3}   The 2003 Note and the Chabad House/Waxman mortgage were executed by Melvin Waxman, the president of Chabad House.  SMS contends that Melvin had authority to sign the documents.  Melvin Waxman and Armond Waxman (the "Waxmans") concurrently signed continuing unconditional guaranties of the 2003 Note for $650,000 and $250,000, respectively.

---

[1] In 1972, the committee for the Chabad House of Cleveland, Inc. was organized as an Ohio nonprofit.  The corporate articles were amended several times to change the name. From June 2001 to July 2005, the nonprofit was known as the Waxman Chabad Center. In July 2005, the name changed to the Chabad House of Cleveland.  The entity continues to exist as the Chabad House of Cleveland, hereinafter identified as "Chabad House." References to the Chabad House during the June 2001 to July 2005 time period are identified as "Chabad House/Waxman."

[2] The background and facts are set forth in greater detail in the prior appeal.  *Waxman Chabad I* at ¶ 2 - 27.

**{¶ 4}** SMS asserts the 2003 Note was revised and divided into two separate notes in 2005. The first was a $900,000 note ("900,000 Note") from the Chabad House issued to National City Bank ("NCB") and guaranteed by the Waxmans. The original $900,000 Note was subsequently lost and, to date, has not been located.

**{¶ 5}** The second note was a $700,000 note ("$700,000 Note") issued by the Chabad House to NCB. In December 2007, the Waxman Center, a separate and unrelated nonprofit corporate entity, entered into an Amended and Restated Commercial Installment Note for $700,000 payable to NCB. The Waxman Center has no ownership interest in the subject property and the Waxmans did not sign as guarantors of the amended $700,000 Note.

**{¶ 6}** In April 2012, PNC Bank, the successor in interest to NCB, entered into an agreement with SMS for the $700,000 Note. The agreement declared that the original $700,000 Note could not be located after a reasonable search. The agreement indemnified SMS against losses arising from a claim for payment from a third party or the obligor under the note due to breach of PNC Bank's warranty of ownership. PNC Bank also assigned the mortgage to SMS.

**{¶ 7}** In August 2012, counsel for SMS issued a demand letter to the Waxmans, Chabad House, and the Waxman Center, claiming default by the parties due to failure to make payments to SMS for the $900,000 Note and the $700,000 Note.

## A. 2014 Case

{¶ 8} In March 2014, SMS filed a complaint ("2014 Case") in the Cuyahoga County Common Pleas Court against the Waxmans, Chabad House, and the Waxman Center asserting the following claims: (1) breach of contract for the $900,000 Note; (2) two claims for breach of guaranty; (3) breach of the $700,000 Note; (4) two claims for breach of the continuing unconditional guaranty of the $700,000 Note; (5) unjust enrichment and constructive trust; (6) equitable lien; (7) equitable subrogation; (8) foreclosure; and (9) fraud.

{¶ 9} SMS moved for partial summary judgment against the Waxmans and the Waxman Center. The defendants filed a cross-motion for summary judgment. The trial court denied summary judgment for SMS and granted summary judgment for the Waxmans and the Waxman Center. Based on *Fannie Mae v. Hicks*, 2015-Ohio-1955, 35 N.E.3d 37 (8th Dist.), the trial court determined that SMS had standing to file the lawsuit, but was not entitled to enforce the notes because: (1) the $900,000 Note was lost and SMS did not possess the note at the time it was lost; and (2) "while the $700,000 Note at issue was recently found, the allonges meant to indorse the note to the plaintiff were never attached to the original note and are therefore ineffective as indorsements of the note. *See* R.C. 1303.24." Journal entry No. 90655629 (Aug. 28, 2015).

{¶ 10} In September 2015, SMS moved for reconsideration or, alternatively, to vacate the judgment and to add PNC Bank as a plaintiff. The trial court denied SMS's motions.

{¶ 11} SMS appealed the trial court's decision. This court sua sponte dismissed the appeal, finding that a fraud claim was still pending; therefore, there was no final, appealable order. *See SMS Fin. XXVI, L.L.C. v. The Waxman Chabad Ctr., et al.*, 8th Dist. Cuyahoga No. 103742, motion No. 497903 (Aug. 8, 2016).

**B. 2016 Case**

{¶ 12} SMS located the original $700,000 Note and obtained an endorsement from PNC Bank. After obtaining the endorsement, and while the 2014 Case was pending on appeal, SMS filed a new complaint in Cuyahoga County Common Pleas Court in February 2016 in another attempt to enforce the $700,000 Note. *SMS Fin. XXVI, L.L.C. v. Waxman Chabad Ctr., et al.*, Cuyahoga C.P. No. CV-16-859399 ("2016 Case").

{¶ 13} SMS filed the 2016 Case against the Waxman Center, Chabad House, and Esther and Stanley Waxman Community Mikvah, alleging: (1) breach of contract for the $700,000 Note that PNC Bank endorsed; (2) unjust enrichment and constructive trust; (3) imposition of an equitable lien for $1.6 million; (4) equitable subrogation; and (5) foreclosure. The Waxmans were not named as defendants. SMS moved to consolidate the 2014 Case and the 2016 Case, which the trial court granted.

{¶ 14} In July 2017, the trial court granted summary judgment in favor of the defendants on the ground of res judicata in the 2016 Case. The trial court found that the 2016 Case arose out of the same transaction or occurrence as the 2014 Case and that "the 2014 and 2016 complaints share a common nucleus of operative facts

with respect to plaintiff attempting to enforce the loan against defendants." Journal entry No. 99685307 (July 14, 2017). The court determined the parties were the same and the claims asserted in the 2016 Case were either litigated or could have been raised in the 2014 Case because the "five claims made by plaintiff in the 2016 complaint are identical to the five claims" in the 2014 Case "that were disposed of via summary judgment." *Id.*

{¶ 15} SMS appealed both cases, which this court consolidated. In its tenth assignment of error, SMS argued that the trial court erred in granting appellees' combined motion for summary judgment on the ground that the 2016 complaint was barred by the doctrine of res judicata. This court determined that res judicata did not apply to the 2016 Case:

> This court remanded the appeal of the 2014 Case to the trial court due to the lack of a final appealable order due to the pending fraud claim. The trial court's indication in the judgment entry that the final pretrial remains set to address the pending claim 2014 Case is inconsistent with the finding of res judicata. Res judicata does not apply to the 2016 Case due to the "absence of a final, appealable order addressing" the issue.

*Waxman Chabad I* at ¶ 38, citing *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 32.

{¶ 16} This court also determined the remaining nine assignments of error were moot and remanded the case. *Waxman Chabad I* at ¶ 40.

{¶ 17} On remand, SMS renewed its motion for summary judgment in the 2016 Case. The defendants filed a cross-motion for summary judgment. The trial court issued a decision once again finding summary judgment in favor of the

defendants on the grounds of res judicata, after determining that "the reasons for the court of appeals' decision are no longer applicable" because SMS had dismissed the fraud claim, and, thus, there was no longer a pending claim in the 2014 Case. Journal entry No. 226302648 (Mar. 4, 2021).

{¶ 18} SMS has again appealed both cases; this court has consolidated the appeals for briefing, hearing, and disposition.

{¶ 19} SMS raises eleven assignments of error for our review; the assignments of error will be combined when possible and discussed out of order for clarity when necessary:

> I. The Trial Court committed prejudicial error by finding that the Court of Appeals has never addressed the merits of the Trial Court's grant of summary judgment in the 2014 case and that the grant of summary judgment in the 2014 case still stands.
>
> II. The Trial Court committed prejudicial error in granting the Defendant Chabad House of Cleveland's and The Waxman Chabad Center's Motion for Summary Judgment, and denying Plaintiff's Motion for Summary Judgment and Motion for Reconsideration, by failing to find that the recent amendment to R.C. 1303.38 applies to the present case.
>
> III. The Trial Court committed prejudicial error in granting the Defendant Waxman Chabad Center's Motion for Summary Judgment, and denying Plaintiff's Motion for Summary Judgment, by finding that Plaintiff was not able to enforce the $700,000 note because the allonge was not attached to the original note at the time of transfer.
>
> IV. The Trial Court committed prejudicial error in granting Defendants Melvin Waxman and Armond Waxman's Motion for Summary Judgment, and denying Plaintiff's Motion for Summary Judgment, by finding the Commercial Guarantees were not enforceable.
>
> V. The Trial Court committed prejudicial error in granting Defendants' Motion for Summary Judgment and by failing to find that Defendants waived the affirmative defenses set forth in R.C. 1303.31 and 1303.38.

VI. The Trial Court committed prejudicial error in granting Defendant Chabad House of Cleveland's Motion for Summary Judgment and by failing to find that the Mortgage was approved by ratification because the Chabad House of Cleveland used, accepted and retained the funds from the mortgage for construction of the building known as the Waxman Chabad Center.

VII. The Trial Court committed prejudicial error in granting Defendant Chabad House of Cleveland's Motion for Summary Judgment and by failing to find that the Chabad House of Cleveland failed to repudiate the mortgage.

VIII. The Trial Court committed prejudicial error in granting Defendant Chabad House of Cleveland's Motion for Summary Judgment and by failing to find that an equitable lien should be established to prevent a fraud on the lender.

IX. The Trial Court committed prejudicial error in granting Defendant Chabad House of Cleveland's Motion for Summary Judgment and by failing to find that Plaintiff is secured by the doctrine of equitable subrogation.

X. The Trial Court committed prejudicial error by denying Plaintiff's motion for leave to amend the complaint to add PNC Bank as a voluntary or involuntary plaintiff.

XI. The Trial Court committed prejudicial error in granting Defendants' Combined Motion for Summary Judgment on the basis that the 2016 Complaint is barred by the doctrine of res judicata.

## II. Law and Analysis

### A. Summary Judgment – 2014 Case

{¶ 20} In the first assignment of error, SMS argues that the trial court erred by finding that this court never addressed the merits of the trial court's granting of summary judgment in the 2014 Case and that the grant of summary judgment in the case still stands.

{¶ 21} In *Waxman Chabad I*, this court reversed the trial court's judgment and remanded the case finding that the tenth assignment of error was dispositive of the case and the remaining assignments of error (assignments of error one through nine) were moot in accordance with App.R. 12(A).

{¶ 22} App.R. 12(A)(1)(c) states that "[u]nless an assignment of error is made moot by a ruling on another assignment of error," a court of appeals shall "decide each assignment of error and give reasons in writing for its decision." An assignment of error is moot when it cannot have '"any practical legal effect upon a then-existing controversy."' *State v. Gideon*, Slip Opinion No. 2019-1104, 2020-Ohio-5635, ¶ 26, quoting *Culver v. Warren*, 84 Ohio App. 373, 393, 83 N.E.2d 82 (11th Dist.1948), quoting *Ex parte Steele*, 162 F. 694, 701 (N.D.Ala.1908). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Gideon* at *id.*

{¶ 23} On remand, the trial court issued the following journal entry:

After consideration of both briefs, as well as the 12/06/2018 Eighth District Court of Appeals opinion[, t]his court finds that the Eighth District Court of Appeals' reversal was limited to the trial court's finding that res judicata barred the 2016 case. Appellant brought ten assignments of error: the first nine dealt with the 2014 case. And the tenth dealt with the 2016 case. The Eighth District Court of Appeals only reached the tenth assignment of error and reversed on that basis. The Eighth District Court of Appeals has never addressed the merits of the trial court's grant of summary judgment in the 2014 case. Accordingly, the grant of summary judgment in the 2014 case still stands.

Journal entry No. 112900527 (Mar. 19, 2020).

{¶ 24} SMS claims that this court's ruling in *Waxman Chabad I* "reversed and deprived" the trial court's judgment as to all assignments of error and the trial court erred in holding otherwise. Thus, in effect, SMS is stating that this court reversed the trial court's judgment in the 2014 Case by holding that the assignments of error one through nine in *Waxman Chabad I* were moot.

{¶ 25} In *Waxman Chabad I*, this court held that the principles of res judicata do not support the trial court's decision to grant summary judgment on the 2016 Case because the fraud claim remained outstanding. In reaching this decision, this court did not reach the merits of or address the first nine assignments of error, all of which concerned the 2014 Case.

{¶ 26} When two cases are consolidated, they are not merged into a single cause but maintain their individual identities. *Transcon Builders, Inc. v. Lorain*, 49 Ohio App.2d 145, 359 N.E.2d 715 (9th Dist.1976), syllabus. "Consolidation does not merge two cases into a single cause, or change the rights of the parties * * *." *Golden Goose Properties, L.L.C. v. Leizman*, 8th Dist. Cuyahoga No. 101002, 2014-Ohio-4384, ¶ 32.

{¶ 27} This court's ruling as it related to the 2016 Case did not affect the 2014 Case, which maintained its separate identity on appeal. When this court determined that nine of the assignments of error were moot pursuant to App.R. 12(A)(1)(c), this court decided that those assignments of error did not have "any practical legal effect upon a then-existing controversy" and remanded the case for further proceedings.

**{¶ 28}** Therefore, the trial court did not err in determining that this court had not rendered judgment as to the 2014 Case and its order granting summary judgment in the 2014 Case was still an active judgment.

**{¶ 29}** Accordingly, the first assignment of error is overruled.

## B. Summary Judgment

### 1. Standard of Review

**{¶ 30}** Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

**{¶ 31}** The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

{¶ 32} Once the moving party demonstrates that no material issue of fact exists for trial and the party is entitled to judgment, the burden shifts to the nonmoving party to put forth evidence demonstrating the existence of a material issue of fact that would preclude judgment as a matter of law. *Dresher* at *id.* In order to meet his burden, the nonmoving party may not merely rely upon allegations or denials in his or her pleadings, and must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56(E), demonstrating the existence of a genuine issue of material fact for trial. *See Houston v. Morales*, 8th Dist. Cuyahoga No. 106086, 2018-Ohio-1505, ¶ 7, citing *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Dresher* at *id.*

### 2. Standing

{¶ 33} A party commencing litigation must have standing to sue in order to invoke the jurisdiction of the common pleas court. *Hicks*, 2015-Ohio-1955, 35 N.E.3d 37, at ¶ 17, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 20. To have standing, a plaintiff must have a personal stake in the outcome of the controversy and have suffered some concrete injury that is capable of resolution by the court. *Hicks* at *id.*, citing *Tate v. Garfield Hts.*, 8th Dist. Cuyahoga No. 99099, 2013-Ohio-2204.

{¶ 34} Although the appellees have argued that SMS did not have standing to initiate the 2014 Case, this court has held that a party may establish standing as holder of the note or as assignee of the mortgage at the time the complaint is filed.

In *CitiMortgage, Inc. v. Patterson*, 2012-Ohio-5894, 984 N.E.2d 392 (8th Dist.), this court, relying on *Schwartzwald*, found that a plaintiff seeking foreclosure "may establish its interest in the suit, and therefore have standing to invoke the jurisdiction of the court when, at the time it files its complaint of foreclosure, it either (1) has had a mortgage assigned or (2) is the holder of the note." *Patterson* at ¶ 21. Relying on *Hicks*, the trial court in this case found that SMS had proper standing to file the lawsuit, but determined that SMS is not a "person entitled to enforce" the notes upon which its motion for summary judgment was premised. Journal entry No. 90655639 (Aug. 28, 2015).

{¶ 35} Based on this court's precedent, SMS had standing to initiate the lawsuit.

### C. Enforcement of a Lost Note and a Lost, then Found, Note
### R.C. 1303.38 (UCC 3-309)

{¶ 36} At the time SMS purchased the $900,000 Note and the $700,000 Note from PNC Bank, PNC Bank was unable to locate either original note. PNC Bank provided SMS with a copy of the notes, along with a lost note affidavit for each note. At some point thereafter, the original $700,000 Note was located and SMS obtained an endorsement from PNC Bank on the original $700,000 Note. As mentioned, the $900,000 Note was never located.

{¶ 37} SMS argues that the recently endorsed $700,000 Note is sufficient to show that it was entitled to enforce the note; this was the basis for the filing of the 2016 Case. The trial court disagreed, finding that, based on this court's decision in

*Hicks*, SMS was not entitled to enforce either note because: (1) the $900,000 Note was lost and SMS did not possess the note at the time it was lost, pursuant to R.C. 1303.31 and 1303.38(A); and (2) "while the $700,000 Note at issue was recently found, the alonges meant to indorse the note to the plaintiff were never attached to the original note and are therefore ineffective as indorsements of the note. *See* R.C. 1303.24." Journal entry No. 90655629 (Aug. 28, 2015).

{¶ 38} Chapter 1303 of the Ohio Revised Code, Ohio's version of Article 3 of the Uniform Commercial Code ("UCC"), applies in this case. When someone signs a promissory note as its maker ("issuer"), they automatically incur the obligation that the instrument will be paid to a "person entitled to enforce" the note. R.C. 1303.52 (UCC 3-412). "Person entitled to enforce" is defined in R.C. 1303.31(A) (UCC 3-301) as: (1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or 1303.58(D). A "holder" is defined, in pertinent part, as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" R.C. 1301.201(B)(21).

{¶ 39} In the second assignment of error, SMS contends that the trial court erred in finding that the previous version of R.C. 1303.38, rather than the current version of the statute, applies to the case at bar.

{¶ 40} As it applies to this case, former R.C. 1303.38(A)(1) provided that a person not in possession of an instrument is entitled to enforce the instrument if, in

part, "the person was in possession of the instrument and entitled to enforce it when loss of possession occurred." It is undisputed that SMS was not in possession of either note when it sought to enforce the notes.

{¶ 41} R.C. 1303.38 was amended, effective September 28, 2016, to read that "[a] person not in possession of an instrument is entitled to enforce the instrument if," in part, "[t]he person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." SMS contends that the amendment to R.C. 1303.38 should apply retroactively to this case.

{¶ 42} "'If there is no clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment.'" *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 20, quoting *Kiser v. Coleman*, 28 Ohio St.3d 259, 262, 503 N.E.2d 753 (1986). The 2016 amendment to House Bill 390, which created the amendment, contains no language providing that the amendment to R.C. 1303.38 is retroactive. Because the General Assembly did not determine that R.C. 1303.38, as amended, would apply retroactively, it only applies prospectively, and therefore did not apply at the time SMS's claims arose.

{¶ 43} SMS is not entitled to enforce the lost notes based on the amendment to R.C. 1303.38. It is undisputed that the $900,000 Note remains lost. Thus, SMS cannot be a person entitled to enforce the $900,000 Note under R.C. 1301.31 and

former R.C. 1303.38 and the trial court did not err in granting summary judgment as to that note.

{¶ 44} SMS next argues, in its third assigned error, that it could enforce the $700,000 Note once it was located and the original allonge was attached to the note.

{¶ 45} R.C. 1303.24 provides, in pertinent part:

(1) "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for any of the following purposes:

(a) To negotiate the instrument;

* * *

(2) Regardless of the intent of the signer, a signature and its accompanying words is an "indorsement" unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

{¶ 46} An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *HSBC Bank USA v. Thompson*, 2d Dist. Montgomery No. 23761, 2010-Ohio-4158, ¶ 56. R.C. 1303.24 requires that indorsements be "on" an instrument, or in papers affixed to the instrument. *Id.* This court has held that an allonge must be affixed to a note to be effective as an indorsement. *Hicks*, 2015-Ohio-1955, 35 N.E.3d 37, at ¶ 22.

{¶ 47} At the time SMS filed the 2014 Case, it did not possess the original $700,000 Note; instead, SMS submitted a copy of the note with a lost note affidavit.

SMS contends that it affixed an allonge to the actual original note after it was found and this was sufficient to effectuate transfer of the note. SMS provides no authority to support its claim and this court is not persuaded.

{¶ 48} The allonge must be attached to the note at the time the claim is filed; there is no evidence that the original allonge was attached to original $700,000 Note at the time SMS filed its complaint. In fact, the evidence shows the opposite. SMS submitted a copy of the $700,000 Note with a lost note affidavit and an original allonge. It was not until the $700,000 Note was found that the original allonge was attached to the note; thus, there was no effective indorsement so as to enable SMS to enforce the note. On this record, we find that the trial court did not err in finding that SMS was unable to enforce the note.

{¶ 49} In light of the above, the second and third assignments of error are overruled.

### D. Mortgage

{¶ 50} SMS contends in its sixth and seventh assignments of error that the trial court erred by failing to find that the mortgage was impliedly ratified by defendant Chabad House's (1) acceptance and retention of the proceeds of the loan to build the Waxman Chabad Center (sixth assignment of error) and (2) failure to repudiate the mortgage (seventh assignment of error).

{¶ 51} As we have already held that SMS is not entitled to enforce either the $700,000 Note or the $900,000 Note, we must determine whether it is a party entitled to enforce the mortgage. Again, we find *Hicks* instructive. In *Hicks*, this

court determined that Fannie Mae was not entitled to enforce the mortgage where it failed to establish that it was entitled to enforce the note under the lost note exception. "Without establishing its right to enforce the underlying debt obligation, Fannie Mae cannot satisfy the prerequisite to obtaining a judgment under the mortgage. In other words, '[a] mortgage may be enforced only by * * * a person who is entitled to enforce the obligation the mortgage secures.'" *Hicks*, 2015-Ohio-1955, 35 N.E.3d 37, at ¶ 33, quoting Restatement of the Law Property 3d, Mortgages, Section 5.4(C) (1997). "To find otherwise would promote the separation of the note and mortgage and potentially subject the defaulting party to claims from multiple parties." *Hicks* at *id.*

{¶ 52} Likewise, SMS cannot enforce the obligation the mortgage secures — the $900,000 or $700,000 Notes — in the case at bar; therefore, SMS also cannot enforce the mortgage.

{¶ 53} Accordingly, the sixth and seventh assignments of error are overruled.

### E. Commercial Guarantees

{¶ 54} In the fourth assignment of error, SMS contends that the trial court erred in finding that the commercial guarantees were not enforceable. SMS argues that even if the notes are not enforceable, the commercial guarantees executed by the Waxmans should be enforced.

{¶ 55} Guaranties are generally construed by courts in the same manner as contracts. *MidAm Bank v. Dolin*, 6th Dist. Lucas No. L-04-1033, 2005-Ohio-3353,

¶ 59, citing *G.F. Business Equip., Inc. v. Liston*, 7 Ohio App.3d 223, 224, 454 N.E.2d 1358 (10th Dist.1982). The Waxmans each signed commercial guaranties stating that "if Lender presently holds one or more guaranties, or hereafter receives additional guaranties [from Guarantor], [3] Lender's rights under all guarantees shall be cumulative."

{¶ 56} However, as stated above, SMS is not the party entitled to enforce the notes; therefore, SMS is not a party to the guaranties and is not entitled to enforce a guaranty securing the notes.

{¶ 57} The fourth assignment of error is overruled.

### F. Affirmative Defenses

{¶ 58} In the fifth assignment of error, SMS contends that the trial court erred by failing to find that the defendants waived the affirmative defenses found in R.C. 1303.31 and former R.C. 1303.38. We disagree.

{¶ 59} Civ.R. 8(C) provides a nonexhaustive list of affirmative defenses and Civ.R. 8(E)(1) directs that "[e]ach averment of a pleading shall be simple, concise, and direct." Civ.R. 8(B) provides a defendant, "shall state in short and plain terms of the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." *Jim's Steak House, Inc. v. Cleveland*, 81 Ohio St.3d 18, 688 N.E.2d 506 (1998). Pursuant to the liberal pleading requirements of Civ.R. 8, the pleadings of the parties to an action need only be in general terms.

---

[3] Only the Armond Waxman Commercial Guaranty had the additional words "from Guarantor" in it.

*Thompson Thrift Constr. v. Lynn*, 2017-Ohio-1530, 89 N.E.3d 249, ¶ 87 (5th Dist.), citing *New Lexington City School Dist. Bd. of Edn. v. Muzo Invest. Group*, 5th Dist. Perry No. 15-CA-00012, 2016-Ohio-1338. Further, a defendant's answer is subject to the same notice-pleading standards as a plaintiff's complaint, and an affirmative defense is generally adequate as long as the plaintiff receives fair notice of the defense. *Thompson Thrift Constr.* at *id.*, citing *Muzo Invest. Group.*

{¶ 60} In its answer, defendant Chabad House asserted as a defense that SMS lacked standing and/or capacity to bring the cause of action "because, among other things, Plaintiff is not the holder of the notes or loans at issue or was not the holder on the date the Complaint was filed" (fifth defense); SMS was not the real party in interest (sixth defense); and SMS lacked authority to bind defendant (seventh defense). In their answer, defendants Waxman Chabad Center, Melvin Waxman, and Armond Waxman asserted as affirmative defenses that SMS was not the proper party, lacked standing, and "such other affirmative defenses as may be asserted following the commencement and/or completion of discovery in this matter."

{¶ 61} Based on the liberal pleading requirements found in Civ.R. 8, we find that the defenses as pled are sufficient; the appellees were not required to cite specific Revised Code sections as affirmative defenses. Thus, the trial court did not err in determining that the appellees did not waive their affirmative defenses.

{¶ 62} The fifth assignment of error is overruled.

## G. Claims in Equity

{¶ 63} In the eighth assignment of error, SMS argues that the trial court erred in failing to find that an equitable lien should be established to prevent a fraud. In the ninth assignment of error, it contends that the court erred by failing to find that SMS is secured by the doctrine of equitable subrogation.

{¶ 64} In *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694, 961 N.E.2d 205 (6th Dist.), the Sixth Appellate District explained the function of an equitable lien:

> "An equitable lien is a right, not acknowledged in law, to have a fund, or specific property, or its proceeds, applied, in whole or in part to the payment of a particular debt or class of debts. It is merely a charge on property for the purpose of security and is ancillary to and separate from the debt itself." * * * An equitable lien arises from either "(1) a written agreement indicating an intent to make a particular property a security for a debt or obligation, or (2) from implication by a court of equity  upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings."

(Citations omitted.)  *Id.* at ¶ 65.

{¶ 65} SMS contends that the court should impose an equitable mortgage on the property because the Chabad House has "actual and constructive knowledge" of the mortgage and has built its facility.  Alternatively, SMS argues, the determination of whether an equitable lien exists is an issue of fact to be determined at trial.

{¶ 66} In this case, the two notes, one for $700,000 and one for $900,000 and the mortgage do exist, it is just that SMS is not the party that is able to enforce the notes and the mortgage.  If this court were to impose an equitable mortgage in favor of SMS on the property and then the holder of the notes and mortgage were to

enforce the notes and mortgage, the appellees could be subject to paying two mortgages for the same property.

{¶ 67} "Legal" or "equitable" subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he [or she] is in equity entitled to the security or obligation held by the creditor whom he [or she] has paid." *Ohio Dept. of Taxation v. Jones*, 61 Ohio St.2d 99, 102, 399 N.E.2d 1215 (1980), citing *Fed. Union Life Ins. Co. v. Deitsch*, 127 Ohio St. 505, 189 N.E. 440 (1934). "In order for equitable subrogation to apply, a lender should have satisfied a prior mortgage or debt, had the intent to hold the first position lien, and the mortgage sought to be subrogated must have failed to end up in the first lien position through mistake." *Countrywide Home Loans, Inc. v. Korb*, 11th Dist. Geauga No. 2010-G-2969, 2011-Ohio-2094, ¶ 19. "[Their] equity must be strong and [their] case clear." *Jones* at *id.*, citing *Harshman v. Harshman*, 35 Ohio Law Abs. 633, 636, 42 N.E.2d 447 (2d Dist.1941).

{¶ 68} The trial court did not make a finding of mistake in this case, nor did SMS plead or argue that they failed to end up in the first lien position through mistake; SMS's position throughout has been that they are entitled to enforce the notes and foreclose on the mortgage. Therefore, the trial court did not err in finding that equitable subrogation does not apply to the case at bar.

{¶ 69} We note, as this court did in *Hicks*, 2015-Ohio-1955, 35 N.E.3d 37, that our holding does not result in a windfall to the appellees; the obligation under

the notes has not disappeared simply because SMS is not the party entitled to enforce them. *Id.* at ¶ 34. "Where the foreclosing party cannot prove its entitlement to enforce the note and mortgage, and hence is forbidden the possibility of foreclosure, the party's only remedy is to pass assignments back to the entity from which the obligation was purchased, and so on, until it reaches the party who is entitled to enforce it." *Id.*

{¶ 70} Accordingly, the eighth and ninth assignments of error are overruled.

### H. Leave to Amend the Complaint

{¶ 71} In the tenth assignment of error, SMS argues that the trial court erred when it denied its motion for leave to amend the complaint to add PNC Bank as a plaintiff.

{¶ 72} As noted above, SMS filed its complaint in the 2014 case on March 7, 2014. SMS moved to amend its complaint to add PNC Bank as a plaintiff on September 10, 2015.

{¶ 73} SMS did not move to amend the complaint to add PNC Bank as a plaintiff until more than year after its initial filing; therefore, pursuant to Civ.R. 15(A), SMS could amend its complaint only with the court's leave. A trial court's decision to add new parties to a lawsuit is subject to a review for abuse of discretion. *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 12. "A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable." *Franciscan Communities, Inc. v. Rice*, 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 32, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d

83, 87, 482 N.E.3d 1248 (1985). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 74} In this case, SMS did not move to amend the complaint to add PNC Bank as a plaintiff until after summary judgment had been granted against SMS on all but one claim and the trial court had held that SMS did not have standing to enforce the notes or foreclose on the mortgage. We note that while the appellees objected to SMS's motion for reconsideration, they did not specifically argue that PNC Bank should not be added as a plaintiff to the case. They also have not addressed this assignment of error in their appellate brief or during oral argument.

{¶ 75} Although the trial court did not explain its reasons for denying SMS's motion, we note that it was within the trial court's discretion to deny the motion to amend the complaint. On this record, we do not find that the trial court's decision was unreasonable, arbitrary, or unconscionable.

{¶ 76} The tenth assignment of error is overruled.

### I. Res Judicata

{¶ 77} In the eleventh assignment of error, SMS contends that the trial court erred in granting summary judgment on the basis that the 2016 Case was barred by res judicata. Under the doctrine of res judicata, "'[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Berns*

*Custom Homes, Inc. v. Johnson*, 8th Dist. Cuyahoga No. 110118, 2021-Ohio-3033, ¶ 20, quoting *Grava v. Parkman*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.

{¶ 78} In Ohio, "'[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 27, quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6.

{¶ 79} The elements required for res judicata based on claim preclusion are: "(1) a final decision on the merits in the first action, (2) a second action involving the same parties or persons in privity with those parties, (3) the second action raises claims that were or could have been litigated in the first action, and (4) the claims in the second action arise out of the same transaction or occurrence as the first action." *E. Cleveland IAFF 500 v. E. Cleveland*, 8th Dist. Cuyahoga No. 108982, 2020-Ohio-4295, ¶ 6, citing *Persaud v. St. John Med. Ctr.*, 8th Dist. Cuyahoga No. 105402, 2017-Ohio-7178, ¶ 21.

{¶ 80} All the requirements of res judicata have been met. First, a prior, final decision on the merits of the claims at issue in the 2014 Case was issued when the trial court granted summary judgment in the case and SMS dismissed its remaining claim (fraud). As to the second element, both the 2014 Case and the 2016 Case involve the same parties: SMS was the plaintiff in both actions and defendants

Waxman Chabad Center and Chabad House of Cleveland were named defendants in both cases.

{¶ 81} Third, the claims raised in the 2016 Case were litigated in the 2014 Case. Contrary to SMS's argument that the 2016 Case differs in that it filed the case based on the $700,000 Note being found and endorsed, those facts were known in the 2014 Case and were the subject of SMS's September 10, 2015 motion for reconsideration. Finally, as to the fourth element, both cases share the same operative facts; the only difference being that the 2016 Case sought enforcement of only the $700,000 Note. As the trial court noted in its decision granting summary judgment in favor of the defendants:

> In both actions, the plaintiff is attempting to enforce the same loan against the defendants. Although plaintiff argues that its 2016 case differs from the 2014 case because plaintiff returned the $700,000 Note (at issue in both the 2014 case and the 2016 case) to PNC Bank and obtained an endorsement on it subsequent to the court's summary judgment decisions in the 2014 case, the court disagrees. To entertain plaintiff's claims in the 2016 case would give plaintiff a second bite at the apple. In addition, "it is irrelevant that the plaintiff, in the second action, is prepared to present evidence or theories of the case not offered in the first action, or that the plaintiff seeks remedies not previously demanded." The actions here share a common nucleus of operative facts.

(Citations omitted.) Journal entry No. 116201648 (Mar. 3, 2021).

{¶ 82} SMS relies heavily on Third District's decision in *U.S. Bank Trust, N.A. v. Watson*, 3d Dist. Paulding No. 11-19-09, 2020-Ohio-3412, in arguing that res judicata does not apply to this case. In *Watson*, HSBC Mortgage Services filed a foreclosure action against defendant Watson as a result of an alleged breach of a

promissory note. The trial court granted HSBC's motion for summary judgment on its foreclosure claim, but the Third District reversed the decision finding that the trial court's ruling was premature. *See id.* at ¶ 7. On remand, HSBC, who did not possess the original note, filed a motion for substitution of plaintiff for U.S. Bank, which the court granted. While an appeal was pending, U.S. Bank filed a new complaint to foreclose against Watson. The trial court granted the bank's motion for summary judgment and denied Watson's motion for summary judgment based on res judicata. On appeal, the *Watson* Court affirmed in favor of U.S. Bank, finding that issue preclusion does not prevent U.S. Bank from litigating the issue of whether claim preclusion barred it from maintaining the second foreclosure:

> As indicated above, issue preclusion applies only when the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior action and when the issue was actually litigated in the prior action. We believe that, under the peculiar facts of this case, U.S. Bank was not afforded a full opportunity in the first foreclosure to litigate the claim-preclusive effect of the first foreclosure on subsequent foreclosure actions and that the issue was not actually litigated.

*Id.* at ¶ 30.

{¶ 83} *Watson* is distinguishable. The *Watson* Court clearly limited its holding to the facts of that case and found that U.S. Bank had not been afforded a full and fair opportunity to litigate its case based on the unique procedural and factual history of that case. For instance, the *Watson* Court noted that the issue of the claim-preclusive effect of the first foreclosure was not determined by the trial court, as it normally is, but in a prior appeal. *Id.* at ¶ 32. "As a result, U.S. Bank was

deprived of the opportunity to utilize the entire array of options for appellate review normally available to parties who are adversely affected by decisions relating to the applicability of claim preclusion." *Id.* at ¶ 33.

{¶ 84} The same is not present in this case. SMS has not been deprived of the full opportunity to litigate either the claims or issues in this case. On this record, the trial court did not err in finding that SMS cannot maintain the 2016 Case based on the doctrine res judicata.

{¶ 85} In light of the above, the eleventh assignment of error is overruled.

{¶ 86} For all of the foregoing reasons, the trial court's judgment granting summary judgment in favor of the appellees is hereby affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR