**[Cite as *Rios v. Bassett-Bocker*, 2025-Ohio-2328.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Jason Rios

Appellant

v.

Aleka R. Bassett-Bocker

Appellee

Court of Appeals No.    L-24-1046

Trial Court No.  JC17261400

**DECISION AND JUDGMENT**

Decided: July 1, 2025

* * * * *

Neil S. McElroy, for appellant

Brianna L. Stephan, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** This is an appeal by appellant, Jason Rios ("father"), from the April 29, 2024 judgment of the Lucas County Court of Common Pleas, Juvenile Division.  For the reasons that follow, we affirm the juvenile court's judgment.

**{¶ 2}** Father sets forth two assignments of error:

1. The trial court erred as a matter of law when it made findings regarding abuse by the [f]ather contrary to the doctrine of res judicata.

2. The trial court erred as a matter of law when it made findings regarding abuse by the [f]ather contrary to the doctrine of collateral estoppel.

## Background

**{¶ 3}** Father and appellee, Aleka Bassett-Bocker ("mother") are the parents of R.B., who was born in July 2015.  Father and mother were never married.

**{¶ 4}** In March 2017, father filed a complaint, in juvenile court, to establish the allocation of parental rights and responsibilities concerning R.B.  In June 2017, mother and father reached an interim agreement.

**{¶ 5}** On August 9, 2018, mother filed a motion to modify parental rights and responsibilities ("motion to modify") in which she sought to change their shared parenting schedule of one week on/one week off due to allegations that father abused R.B., which allegations were being investigated by child protective services ("CPS").

**{¶ 6}** On September 17, 2018, a hearing was held before a magistrate and the next day the magistrate issued a decision finding that it was in R.B.'s best interest for father to be the residential parent and legal custodian.  On September 25, 2018, the juvenile court issued a judgment entry designating father, who lived in Michigan, the residential parent and legal custodian of R.B.  Mother filed an objection to the magistrate's decision.  On May 6, 2019, the juvenile court issued a judgment entry ("the 2019 custody order") denying mother's objection and affirming its September 25, 2018 judgment.

2.

{¶ 7} On May 27, 2020, mother filed a motion to modify based on allegations that father abused R.B., and that the State of Michigan was conducting an investigation. In the summer of 2020, R.B. was removed from father's home and placed with mother in Ohio. Also that summer, Monroe County Child Protective Services ("Michigan CPS") filed a child protective complaint against father in Monroe County Michigan Probate and Family Court ("Michigan court") which included allegations that father rubbed oils with marijuana on R.B., blew marijuana smoke in R.B.'s face and stuck a wand up R.B.'s buttocks. The juvenile court relinquished jurisdiction to the Michigan court so the Michigan court could exercise temporary jurisdiction in the child protective case.

{¶ 8} In March 2022, the Michigan court entered an "Order of Dismissal Following Jury Verdict" in which it set forth that the jurors rendered their verdict finding no statutory grounds for the Michigan court to exercise jurisdiction over father or R.B., and ordered its temporary jurisdiction terminated.

{¶ 9} On March 30, 2022, in juvenile court, father filed a motion to modify, and on April 8, 2022, mother filed a motion to modify. Juvenile court then formally accepted and reasserted its original jurisdiction. On September 21 and 22, 2023, the trial on the motions to modify was held before a magistrate in juvenile court.

{¶ 10} On November 20, 2023, the magistrate issued a decision finding a substantial change in circumstances in R.B.'s life since the 2019 custody order. The

magistrate set forth, inter alia:

> In 2019, Michigan child protection services (CPS) conducted an investigation involving [R.B.] because the child presented with significant and substantial levels of THC in his system on a number of occasions immediately subsequent to father's parenting time and at the onset of mother's parenting time. The child, mother and father all admitted that father had been rubbing ointments containing THC and/or CBD on [R.B.]'s skin. In fact, in 2020, father admitted that the oils he used on [R.B.] contained THC and further reported to the CPS worker that "He'll [R.B.] always have THC in his system. He's allowed to and this is a legal right." . . . [R.B.] was uncomfortable with father rubbing the ointments on his skin, and with the way the ointments made him feel. Father claimed that mother was the one who administered the THC to their son. There was no credible evidence to support father's claim against mother. Based on this investigation, Michigan CPS substantiated physical abuse. . .

> During the Summer of 2020 when he was about 4-years-old, [R.B.] reported to mother at a parenting time exchange that his buttocks hurt. Mother immediately had the child examined by medical professionals who found that [R.B.] suffered a tear in his anus. [R.B.] disclosed that his father had caused the injury when he inserted a "wand" into the child's anus. [R.B.]'s report was and is consistent with the injury he suffered. Significantly, father reports that he does own and uses a "wand" in his role as a "medicine man[.]"

> Since [R.B.]'s original disclosure to medical professionals about the cause of his anal injury in 2020, [R.B.] has consistently reported that his father put a wand in his butt causing the anal tear . . . Father denies [R.B.]'s claim, and, instead, claims that either mother caused the injury and/or coached [R.B.] to say that his father caused the injury. Father's hypothetical claims against mother regarding [R.B.]'s anal injury are not supported by any evidence. Mother denies father's coaching claims. Furthermore, [R.B.] consistently denies that his mother has ever coached him on these issues. . .

> In the Summer of 2020, [R.B.] was removed from his father's possession to live with his mother in Toledo while the sexual abuse allegations were being investigated and prosecuted in Michigan between July 2020 through March of 2022. [R.B.]'s needs were being met in mother's care . . . During those nine to ten months, father had supervised and limited contact with his son. After the Michigan child protection case to terminate father's parental rights was dismissed for insufficient evidence to exercise jurisdiction,

4.

possession of [R.B.] was returned to his father for a few weeks between March and April of 2022. During this time, mother and father filed the instant action, and possession of [R.B.] was removed from father and returned to mother. Significantly since July of 2020 and for over three years, father has had only about two weeks of unsupervised contact with [R.B.] since the child disclosed the cause of his anal injury. . .

Significantly, [R.B.] does not want to visit with his father. [R.B.] does not want to be touched by his father. Currently, [R.B.]'s parenting time with father is supervised . . . once per week. Although father reports that [R.B.] has fun with father at the supervised visits, [R.B.] states [that] he "pretends" to enjoy his supervised visits with father. . . Significantly, [R.B.] is concerned about father touching him due to the history of sexual abuse, and his counselor reports that she has not witnessed any coaching behavior by [R.B.] on these issues.

Since this court's [2019 custody order], father claims that mother was abusing [R.B.] when he was a toddler. . . [E]ven subsequent to an LCCS investigation, there were no findings of abuse by mother and no charges were ever brought against mother due to father's claim. In December of 2022, however, child protection services became involved with mother due to allegations of sexual abuse of a minor who lived in mother and her significant other's household. In December of 2022 while LCCS completed its investigation, [R.B.] was removed from mother's possession. At that time, both mother and father had supervised parenting time with [R.B.]. Ultimately since about January 2023, [R.B.] was removed from his mother's possession and placed with his maternal step-grandfather where he continues to live.

[R.B.] has been continuing in counseling services since September of 2022, and he is doing well in school. . . [H]owever, [R.B.] started to regress and self-harm when his contact with mother was limited to supervised contact for a few hours per week. [R.B.] wanted desperately to have more contact with his mother. LCCS investigation finally concluded with indicated sexual abuse by mother. Mother has consistently denied the allegations. Soon thereafter and upon the recommendation of the GAL, [R.B.]'s parenting time with mother increased and became less restrictive. With his increased contact with mother, [R.B.] is again making significant progress in counseling. . .

Father works as a medicine man and a spiritual leader. He lives with his significant other, has two other minor children and one other adult child. His home is appropriate. Mother has one other child besides [R.B.]. She is employed as a secretary and an entertainer. Mother claims that father repeatedly threatens her. Mother continues in counseling services. The GAL has no safety concerns regarding mother with [R.B.]. . . The GAL believes that father does not give deference to [R.B.]'s continuing belief that father has abused him, or that [R.B.] has a need for a significant relationship with his mother. The GAL believes that it is in [R.B.]'s best interest to live in the custody of his mother, that father should continue to have only supervised contact with his son, and that father and son should engage in reunification counseling to reestablish a safe and healthy relationship between them before father's parenting time is expanded and becomes less restrictive. By a preponderance of the evidence since the last court order, this court agrees that these GAL recommendations are in the child's best interest under these circumstances.

{¶ 11} The magistrate found that naming mother the residential parent and legal custodian of R.B. and awarding father supervised parenting time with R.B. was in the best interest of the child. The juvenile court, by judgment entry, adopted the magistrate's decision. Father objected to the custody determination. On January 30, 2024, the juvenile court denied father's objection, upheld the Magistrate's Decision and awarded legal custody of R.B. to mother and supervised parenting time to father. Father appealed; this court remanded the case for a final appealable order. On April 29, 2024, the juvenile court issued its judgment entry. Father again appealed.

6.

**First and Second Assignments of Error**

{¶ 12} Father's assigned errors are related and will be addressed together.

**Father's Arguments**

{¶ 13} Father argues the doctrines of res judicata and collateral estoppel apply with respect to his alleged abuse of R.B. Father submits that res judicata ensures the finality of a decision, citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979), and collateral estoppel bars relitigating an issue of fact which was previously determined in a prior action between the same parties or their privies, citing *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 64 (2002). He further contends that the doctrines apply to decisions rendered across state lines such that when the same claim or issue is litigated in two courts, the second court should give res judicata effect to the first court's judgment, regardless of the order in which the cases were filed. He cites *Chicago, R.I.P. Ry. v. Schendel*, 270 U.S. 611, 615-17 (1926) in support. He also argues that because of the Full Faith and Credit Clause, the judgment of one state binds another state by res judicata as to the same claims made in the first action. He refers to U.S. Const., art. IV, § 1 and *Durfee v. Duke*, 375 U.S. 106, 109 (1963) in support.

{¶ 14} Father notes, citing *SMS Financial XXVI, L.L.C. v. Waxman Chabad Ctr.*, 2021-Ohio-4174, ¶ 79 (8th Dist.), he must demonstrate four elements to establish res judicata: (1) a final decision on the merits in the first case; (2) a second case involving the same parties or a person in privity; (3) the second case raises claims which were, or could have been, litigated in the first case; and (4) the claims in the second case arise out of the same occurrence as the first case.

7.

{¶ 15} Father asserts that in the Michigan case, the jury made a final decision on the merits regarding the allegations of abuse against him and although mother was not a party "she was apprised of the case and was afforded involvement in the proceedings," as she was present, with counsel, at several hearings and had the opportunity to raise issues, present evidence and testify concerning the allegations. Father maintains that "[f]or our purposes 'privity' only requires mutuality of interest" and mother's "current claim that change in circumstances exists based on the abuse allegations wholly aligned with the claims" brought by Michigan CPS and she failed to present any evidence, except for her own testimony, to support her claim that father abused R.B. Father cites to *Brown v. Dayton*, 89 Ohio St.3d 245 (2000). He further argues that both cases included the same claim for relief, "wherein both parties' desired result being the removal of [R.B.] from the care and custody of Father based on the abuse allegation and thereby awarding Mother custody of [R.B.]."

{¶ 16} Father insists the juvenile court relied on a finding that he abused R.B. when the court determined there had been a change of circumstances, but this finding was precluded by res judicata and collateral estoppel.

**Mother's Arguments**

{¶ 17} Mother argues that the juvenile court recognized the parents' motions to modify as to the 2019 custody order, applied R.C. 3109.04, relevant to the modification, and then considered the mandatory best interest factors set forth in R.C. 3109.04(F). Mother contends the juvenile court correctly applied the law and was not precluded from doing so by any determination reached in the Michigan child protective case. She asserts

8.

res judicata did not preclude the juvenile court from adjudicating the parents' requests to reallocate custody or from considering evidence in determining R.B.'s best interest.

{¶ 18} Mother notes that the Michigan child protective case concerned abuse allegations that "Father was administering liquid marijuana to [R.B.] and blowing marijuana smoke in his face" and "on 7/16/2020 or 7/17/2020 . . . Father stuck a sharp wand of some sort up [R.B.]'s buttocks." Mother submits the Michigan case focused on R.B.'s welfare and Michigan's interest in protecting R.B. rather than resolving custody disputes between the parents, so the custody claims were not actually litigated in the Michigan court.

{¶ 19} Mother argues that nothing in the disposition of the Michigan case permanently foreclosed the right of either parent to seek modification of the 2019 custody order, where the primary consideration is the best interest of the child. She asserts the juvenile court did not err when it considered the existence, investigation and adjudication of abuse allegations against father which arose after the 2019 custody order and were probative of the child's best interest in modifying that order. She cites R.C. 3109.04(F)(1)(h).

{¶ 20} Mother further argues that she was neither a party or in privity with a party to the Michigan child protective case, nor was there a final judgment on the merits as to custody or a full and fair opportunity for her to have litigated the issue. Mother maintains that custody of R.B. was neither heard nor decided by the Michigan court, and the abuse allegations in Michigan CPS's petition to terminate father's parental rights are not identical to issues derived from a best interest analysis.

9.

{¶ 21} Mother asserts "in the context of abuse proceedings, the relationship between a parent and a children services agency does not meet the criteria for privity[, as Michigan CPS] represents the interests of the state and the welfare of children, whereas a parent represents [his or her] own personal interests and rights concerning the[] child. That is, a parent's interest in the proceedings is in maintaining parental rights and [a] relationship with the[] child, while the state, when prosecuting a petition to terminate parental rights, seeks to end that relationship by[]way of proof of parental unfitness. The claims and defenses available to children services in such proceedings are based on statutory duties, which are separate and distinct from the claims and defenses available to a parent engaged in a custody dispute."

## Standard of Review

{¶ 22} Whether the doctrine of res judicata applies is a question of law. *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 21. Therefore, a de novo standard of review is employed, and no deference is given to the trial court's decision. *Id.*

## Applicable Law

{¶ 23} "The doctrine of res judicata involves both claim preclusion . . . and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995).

{¶ 24} The doctrine provides that a final judgment rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent actions on the same claims between the same parties or those in privity. *Brooks v. Kelly*, 2015-Ohio-2805, ¶ 7.

10.

{¶ 25} Claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the first action. *Lycan* at ¶ 23, citing *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

{¶ 26} Issue preclusion (collateral estoppel) prevents parties from relitigating facts and issues in a second action which were fully litigated in a prior action. *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). Issue preclusion applies even if the causes of action differ. *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1988).

{¶ 27} Privity may be found where one had "[a]n interest in the result or an active participation in the original lawsuit" or where individuals raise "identical legal claims and seek identical rather than individually tailored results." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 9, citing *Brown v. Dayton*, 89 Ohio St.3d at 248 and *Grava*.

{¶ 28} R.C. 2151.23 provides in relevant part:

(A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:

. . .

(2) . . . to determine the custody of any child . . . ;

. . .

(F)(1) The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 and 3127.01 to 3127.53 of the Revised Code . . .

R.C. 3109.04 states in pertinent part:

(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, . . . and that the modification is necessary to serve the best interest of the child. . .

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
. . .

(h) Whether either parent . . . previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . . and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child . . .

R.C. 3127.01(B)(3) states:

"Child custody determination" means a judgment, decree, or other order of a court that provides for legal custody, physical custody, parenting time, or visitation with respect to a child.  "Child custody determination" includes an order that allocates parental rights and responsibilities.

{¶ 29} Therefore, under R.C. 3109.04(E)(1)(a), modification of a decree that allocates parental rights and responsibilities involves the threshold question of whether a change of circumstances occurred, and if so, then the question is whether modifying the prior decree is required to fulfill the child's best interest.  "Thus, as a practical matter, a custody and visitation order is never absolutely final.  This fact makes application of res

12.

judicata impractical. The very purpose of res judicata is to deter the repeated litigation of resolved issues, thereby ensuring finality in judgments and the conservation of judicial resources. . . However, in the area of custody and visitation, we sacrifice finality and some of our limited judicial resources in order to secure a higher value-the best interests of children." *Kelm v. Kelm*, 92 Ohio St.3d 223, 227 (2001).

**Analysis**

{¶ 30} Father contends the juvenile court relied on a finding that he abused R.B. when it determined, with respect to the parties' motions to modify, that there had been a change of circumstances, but this finding was precluded by res judicata and collateral estoppel.

{¶ 31} Upon review of the record and the applicable law, we find father failed to establish that the doctrine of res judicata applied to bar the juvenile court from considering the abuse allegations levied against father in the Michigan court. Father did not demonstrate that mother was in privity with Michigan CPS as mother sought custody of R.B. in juvenile court while Michigan CPS prosecuted the complaint alleging father abused R.B. and sought to remove R.B. from father's custody and terminate father's parental rights. Thus, the legal claims raised by mother and Michigan CPS are not identical and their desired outcomes differed. Since Michigan CPS and mother each sought individually tailored results, their interests were not the same. Moreover, father failed to establish that mother could have been awarded custody of R.B. in the Michigan child protective action.

13.

**{¶ 32}** We therefore conclude that the doctrine of res judicata (claim preclusion and issue preclusion) did not apply with respect to the allegations that father abused R.B., and the juvenile court did not err when it made findings regarding abuse by father in support of a change in circumstances. Accordingly, we find father's assignments of error not well-taken.

**{¶ 33}** The April 29, 2024 judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.      _____
                    JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.      _____
CONCUR.                JUDGE

              _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.