[Cite as *Pham Construction & Co., L.L.C. v. Tran*, 2024-Ohio-634.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PHAM CONSTRUCTION AND COMPANY, LLC | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 23 CAE 02 0018 |
| | : | |
| HUY D. TRAN, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, 21 CV H 06 0305

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      February 20, 2024

APPEARANCES:

For Plaintiff-Appellant:

MICHAEL J. ANTHONY
VINCENT P. ZUCCARO
978 S. Front St.
Columbus, OH 43206

For Defendants-Appellees:

MICHAEL T. COX
4930 Reed Road, Suite 220
Columbus, OH 43220

*Delaney, J.*

{¶1} Plaintiff-Appellant Pham Construction and Company, LLC appeals the December 14, 2022 and January 23, 2023 judgment entries of the Delaware County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2} Plaintiff-Appellant Pham Construction and Company, LLC ("PCC") is a limited liability company that specializes in interior buildouts for commercial clients. Defendants-Appellees Huy D. Tran and Linh T. Quach are the co-owners of a business known as Perfect 10 Nail Salon. Tran and Quach owned and operated Perfect 10 as a general partnership (hereinafter "Perfect 10"). PCC and Perfect 10 entered into a contract on April 18, 2018 for an expansion buildout of a leased commercial property located in Delaware, Ohio.

### Complaint, Counterclaim, and Pre-Trial Proceedings

{¶3} On June 28, 2021, PCC filed a complaint with the Delaware County Court of Common Pleas naming Tran and Quach dba Perfect 10 as defendants. The complaint alleged four causes of action: breach of contract, promissory estoppel, civil theft, and fraud.[1] While PCC acknowledged that Perfect 10 had made a first contracted payment of $20,000 on August 29, 2018 and a second contracted payment of $38,722 on October 25, 2018, PCC claimed Perfect 10 failed to make a third contracted payment of $30,000. PCC alleged that Perfect 10 breached the 2018 Contract when it refused to pay the

---

[1] On July 19, 2022, the trial court granted summary judgment in favor of Perfect 10 on PCC's claims for promissory estoppel and fraud. On October 10, 2022, the trial court granted a directed verdict in favor of Perfect 10 on PCC's claim for civil damages for the criminal act of passing bad checks. PCC does not raise those judgments in its appeal. We will focus our recitation of the facts on the remaining causes of action at issue in the appeal.

remaining contractual balance of $39,858 and $14,470 for additional work not covered by the 2018 Contract.

{¶4} Perfect 10 filed a motion to dismiss PCC's claims for civil theft and fraud, which the trial court denied on September 17, 2022. It also filed its answer to the complaint and raised counterclaims for breach of contract, conversion, and civil theft based on the authorized use of property and theft by deception pursuant to R.C. 2307.60 and 2307.61. The breach of contract counterclaim alleged that PCC had breached the 2018 Contract when it failed to complete the improvements to the property within the agreement's five-month deadline. Perfect 10 also alleged it had made a $30,000 payment and PCC refused to credit that payment to Perfect 10's balance under the 2018 Contract; thereby, Perfect 10 raised a counterclaim for civil damages for the criminal act of theft by deception.

{¶5} Perfect 10 filed a motion for summary judgment seeking judgment as a matter of law on all of PCC's causes of action. The trial court granted summary judgment in favor of Perfect 10 on PCC's claims for promissory estoppel and fraud. It denied summary judgment on PCC's claims for breach of contract and civil theft.

### Jury Trial

{¶6} The matter proceeded to a jury trial on October 4, 2022. Prior to sending the matter to the jury, the trial court granted directed verdicts on PCC's claim for civil damages for the criminal act of passing bad checks and Perfect 10's counterclaims for conversion and civil damages for the criminal act of unauthorized use of property. The only claims for the jury to decide were PCC's claim for breach of contract and Perfect 10's counterclaims for breach of contract and civil damages for the criminal act of theft by deception. The following facts, relevant to this appeal, were adduced at trial.

{¶7} On April 18, 2018, Calvin Pham and Thanh Tam Nguyen (partners in Pham Construction) entered into a contract with Huy Duc Tran for the buildout extension of the Perfect 10 nail salon in the amount of $98,580. Pham, Nguyen, and Tran signed the 2018 Contract at the Chase Bank before a notary. At the time of the signing, PCC believed that Perfect 10 was in the process of obtaining a loan from Chase Bank to pay for the construction. Perfect 10 denied that it told PCC it had applied for a loan with Chase Bank; rather, it had inquired into a loan and found the terms unacceptable. Article 1 of the 2018 Contract stated the work was divided into three phases, with the work to be completed in five months. Article 4 of the 2018 Contract outlined the payments:

* * * the Owner shall make progress payments to the Contractor as follows:

1st Payment (50% of $98,580): OR must make this payment to PCC to start the project.

2nd Payment (30% of $98,580): OR must make this payment to PCC after the completion of PHASE 1 construction work.

3rd Payment (10% of $98,580): OR must make this payment to PCC after the completion of PHASE 2 construction work.

4th Payment (Final Payment 10% of $98,580): OR must make this payment to PCC within 7 days of receiving Certify of Opening from CITY OF DELAWARE.

Article 15 of the 2018 Contract contained a provision if the Owner failed to make a payment for a period of 7 days through no fault of the Contractor, the Contractor could, upon 7 days written notice to the Owner, terminate the contract. PCC admitted that during its dealings with Perfect 10, it did not always follow the terms of the 2018 Contract.

{¶8} On July 1, 2018, Tran gave PCC a check for $49,290. Tran told PCC to hold the check and not cash it because he did not have the funds to cover the check. He never told PCC to return the check to Perfect 10. PCC started the construction project a few days later. On July 2, 2018, Tran testified that he gave Nguyen $30,000 as payment towards the project ($20,000 in cash from Tran's mother and a $10,000 money order from Tran's brother). Tran testified that he forgot to ask Nguyen for a receipt for the $30,000 payment. Tran's mother and brother testified at the trial that they provided Tran with the funds, and he had since paid them back.

{¶9} Prior to beginning the project, PCC informed Perfect 10 that it could work with Perfect 10's commercial landlord to receive funds towards the project as a Tenant Allowance. Perfect 10's landlord offered $41,000 towards the project for a HVAC system and demising wall, and 150 days of free rent.

{¶10} PCC completed Phase 1 of the project in August 2018. On August 29, 2018, the parties agree that Tran gave PCC $20,000 as payment towards the project (a $15,000 check and $5000 in cash). PCC provided Tran with a receipt for the $20,000 payment. Tran testified that on August 29, 2018, he also asked PCC for a receipt for the $30,000 payment made by him in July 2018. He stated that PCC provided him with a receipt for the $30,000 payment but Pham testified the August 29, 2018 receipt showing a $30,000 payment was a forgery. Pham testified that he did not keep for his own records the copies of the receipts he provided to his customers.

{¶11} Phase 2 of the project was completed in October 2018. PCC texted with Perfect 10 and demanded payment. In one text, PCC stated it had received a first payment of $50,000, which covered the first payment and partial second payment. When

it did not receive a timely payment, PCC stopped work on the project. Pham testified that while the 2018 Contract contained provisions for non-payment, Pham did not want to waste time writing a letter and was not obligated to follow the terms of the contract. On October 25, 2018, Perfect 10 paid PCC $38,722 via wire transfer.

{¶12} The City of Delaware issued a Certificate of Occupancy for the project on March 5, 2019. Tran testified that the expanded nail salon space was supposed to open in November 2018 under the terms of the 2018 Contract. While Perfect 10's landlord provided it with 150 days of free rent as part of the Tenant Allowance, because the project took longer than five months, Perfect 10 was required to pay rent for the expanded leased space even though the business was not open. Perfect 10 argued that it had paid PCC $88,722 and admitted at trial that it still owed PCC $9,858 under the final payment provision of the 2018 Contract.

{¶13} On February 20, 2019, PCC submitted an invoice to Perfect 10 for additional work outside the contract in the amount of $14,470 that included $5,600 for additional tile installation, $4,200 for ceiling painting, and $4,670 for installing a tankless water heater. Perfect 10's landlord communicated with PCC for a status update on the project and PCC responded that it had never received a $30,000 payment from Perfect 10. Pham testified that when the landlord responded with an emailed copy of a receipt for the $30,000 payment from Perfect 10, this was the first time he became aware of the alleged receipt and/or payment for $30,000. On February 6, 2020, Perfect 10's landlord paid Perfect 10 in the amount of $37,955 for the Tenant Allowance. When PCC became aware that Perfect 10 had been paid the Tenant Allowance, PCC cashed Perfect 10's check for $49,290. The check did not clear.

{¶14} At the conclusion of the parties' cases, the parties moved for directed verdicts. The trial court granted Perfect 10's motion for directed verdict on PCC's claim for civil damages for the criminal act of passing bad checks. PCC moved for a directed verdict on Perfect 10's counterclaims, which the trial court granted as to conversion and civil damages for the criminal act of unauthorized use of property. The only claims sent to the jury were PCC's claim for breach of contract and Perfect 10's counterclaims for breach of contract and civil damages for the criminal act of theft by deception.

{¶15} The parties discussed the jury instructions and made their objections to the instructions on the record. Perfect 10 had no objection to the jury instructions. PCC raised only one objection to the instruction for the jury to treble the damages if it found PCC liable for the criminal act of theft. The trial court overruled the objection.

{¶16} On the issue of Perfect 10's breach of contract claim, the trial court instructed the jury as to the measure of damages. The trial court stated,

> If you find by a preponderance of the evidence that Mr. Tran and Ms. Quach proved their counterclaim for breach of contract, you must determine whether Mr. Tran and Ms. Quach suffered any damages as a result of the breach. If you find that they have suffered damages, they are entitled to damages in an amount sufficient to place them in the same position in which they would have been in had the contract been fully performed by Pham Construction, so long as the damages are reasonably certain and reasonably foreseeable.
>
> For either claim of breach of contract, you may only award damages the existence and the amount of which are reasonably certain and which have

been proved to you by the greater weight of the evidence. You may not award damages that are remote are [sic] speculative.

You may award only those damages that were the natural and probable result of the breach of the contract or that were reasonably within the contemplation of the parties as the probable result of the breach of the contract. This does not require that the breaching party actually be aware of the damages that would probably result from the breach of contract, so long as the damages were reasonably foreseeable at the time the parties entered into the contract.

(T. 607-608).

{¶17} The jury was provided with multiple interrogatories. In Jury Interrogatory ("JI") #1A and #9, the jury found there was a contract between PCC and Perfect 10 to construct improvements to Perfect 10 nail salon. In JI #1B, the jury found there was a contract between PCC and Perfect 10 for additional construction work to Perfect 10 nail salon. In JI #2, the jury found that Perfect 10 breached the contract by failing to pay PCC for construction of the improvements to the nail salon. In JI #3, the jury found that PCC proved by a preponderance of the evidence that, at the time of the breach, it had substantially performed its duties under the contract(s). In JI #4, the jury found that PCC was entitled to $15,458 in damages for its claim of breach of contract. The jury wrote "$9858.00 10%" and "$5600.00 Tile Installation" on the interrogatory.

{¶18} In JI #10, the jury found that Perfect 10 proved by a preponderance of the evidence that PCC materially breached the contract. In JI #11, the jury found that Perfect 10 substantially performed its duties under the contract. JI #12 asked the jury what

amount it found that Perfect 10 was damaged as a natural and probable result of PCC's breach of contract, or what damages were reasonably within the contemplation of the parties as the probable result of PCC's breach. It further stated that Perfect 10 was entitled to damages in an amount sufficient to place them in the same position that they would have been in had the contract been fully performed. The jury awarded Perfect 10 $18,201.96 and wrote "4 months rent" next to the award.

{¶19} As to Perfect 10's counterclaim for civil damages for a criminal act (theft), the jury found in JI #13 and #14 that PCC knowingly obtained or exerted control over a payment of $30,000, which was not credited to Perfect 10's account and that PCC acted with purpose to deprive Perfect 10 of the $30,000 payment when PCC obtained or exerted control over the payment by accepting the payment and not crediting it to Perfect 10's account. In JI #15, the jury found that PCC obtained or exerted control over the $30,000 payment by deception. JI #16 asked the jury to write a number that was three times the amount of damages that it found were caused to Perfect 10 by the criminal act of theft by PCC. The jury awarded Perfect 10 the amount of $0.33 in damages, which was trebled per statute to $1.00. In JI #17A, the jury found Perfect 10 was entitled to punitive damages and awarded $27,302.94 in punitive damages. The jury found PCC should pay the attorney fees for Perfect 10 in JI #17B.

{¶20} On October 10, 2022, the trial court journalized the jury verdict.

**Post-Trial Proceedings**

{¶21} On November 1, 2022, PCC filed a Motion for Judgment Notwithstanding the Verdict and a Motion for Remittitur, or in the alternative, for a New Trial. On November

7, 2022, Perfect 10 filed a Motion for Judgment Notwithstanding the Verdict, or in the alternative, Additur, or in the alternative, for New Trial.

{¶22} A hearing on attorney's fees was held before the magistrate on November 28, 2022. The magistrate awarded attorney's fees and costs in the amount of $48,658.96 to Perfect 10. The parties filed objections to the magistrate's decision.

{¶23} On December 14, 2022, the trial court issued its judgment entry on the parties' motions for JNOV, remittitur, additur, and new trial. The only subject of this appeal is whether the trial court erred when it granted Perfect 10's motion for JNOV in part and denied PCC's motion for JNOV in part. We focus on those issues discussed in the trial court's December 14, 2022 judgment entry. The trial court first addressed Perfect 10's post-trial motions. Perfect 10 sought judgment on the issue of damages for its counterclaim for civil theft whereby it requested the trial court to increase damages to the full value of the $30,000 payment, which would be trebled to $90,000. In the alternative, Perfect 10 requested it be awarded the statutory minimum of $200. The trial court found that pursuant to R.C. 2307.61(A), Perfect 10 was entitled to the statutory minimum of $200 in damages as a matter of law for its civil theft counterclaim.

{¶24} The trial court next addressed PCC's arguments. PCC argued it was entitled to JNOV on Perfect 10's counterclaim for civil theft because Perfect 10 could not recover compensatory damages for civil theft under the economic loss doctrine. PCC argued that Perfect 10's damages sounded in contract, not in tort. PCC pointed to the jury's damages award for $15,458 on its claim for breach of contract, which demonstrated that Perfect 10's harm from PCC's theft of the $30,000 payment was the result of the conduct governed by the 2018 Contract. Relying on this Court's decision in *Windsor*

*Medical Center, Inc. v. Time Warner Cable, Inc.*, 2021-Ohio-158, 167 N.E.3d 23 (5th Dist.), the trial court found that while Perfect 10 owed $30,000 under the 2018 Contract, the jury found that PCC engaged in a separate tortious act of theft by deception in regard to the $30,000 payment whereby the jury awarded damages for the harm caused by the deceptive conduct. The trial court then agreed with PCC to reduce Perfect 10's punitive damage award to $400 to comply with R.C. 2315.21. Finally, the trial court found the jury correctly calculated Perfect 10's damages on its breach of contract counterclaim. PCC contended the jury used the incorrect measure of damages when it awarded Perfect 10 damages for $18,201.96, which was the equivalent of four months' rent. PCC argued the jury used "loss of use" damages. The trial court found that however the damages were characterized, the 2018 Contract included terms specifying the duration of the construction and the evidence demonstrated the construction was finished after that agreed upon term. The jury had sufficient evidence to conclude the parties contemplated the damages caused by PCC's delay.

{¶25} On January 23, 2023, the trial court issued its judgment on the issue of attorney's fees. It overruled the parties' objections to the December 8, 2022 magistrate's decision and adopted the award of $48,658.96 in attorney's fees and costs to Perfect 10.

{¶26} PCC filed its Notice of Appeal of the trial court's judgments on February 21, 2023.

## ASSIGNMENTS OF ERROR

{¶27} PCC raises two Assignments of Error:

I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AS TO

THE JURY VERDICT AWARDING DEFENDANT-APPELLEE DAMAGES

FOR CIVIL THEFT, PUNITIVE DAMAGES, AND ATTORNEY'S FEES.

II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S

MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AS TO

THE JURY VERDICT AWARDING DEFENDANT-APPELLEE DAMAGES

FOR BREACH OF CONTRACT.

## ANALYSIS

{¶28} PCC argues the trial court erred when it denied in part its motion for JNOV.[2] For the reasons outlined below, we disagree.

### Standard of Review

{¶29} Civil Rule 50(B) governs motions for judgment notwithstanding the verdict ("JNOV"). When ruling on a motion for JNOV, a trial court applies the same test as in reviewing a motion for a directed verdict. *Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.*, 2021-Ohio-158, 167 N.E.3d 23, ¶ 23 (5th Dist.) citing *Ronske v. Heil Co.*, 5th Dist. Stark No. 2006-CA-00168, 2007-Ohio-5417; *Pariseau v. Wedge Products*, Inc., 36 Ohio St.3d 124, 522 N.E.2d 511 (1988). In reviewing a motion for JNOV, courts do not consider the weight of the evidence or the witness credibility; rather, courts consider the much narrower legal question of whether sufficient evidence exists to support the verdict. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 693 N.E.2d 271 (1998). In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's

---

[2] While PCC states in its notice of appeal that it is appealing the January 23, 2023 judgment entry that determined the amount of attorney's fees to be awarded, PCC has not raised any assignment of error as to the trial court's determination of the amount of attorney's fees.

function and the motion must be denied. *Osler v. City of Lorain*, 28 Ohio St.3d 345, 504 N.E.2d 19 (1986). Appellate review of a ruling on a motion for JNOV is de novo. *Meredith v. All. Castings Co., LLC*, 5th Dist. Stark No. 2020 CA 00143, 2021-Ohio-2565, ¶ 10 citing *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.*, 5th Dist. Stark No. 2006CA00048, 2006-Ohio-6232.

## I.

{¶30} In its first Assignment of Error, PCC argues the trial court erred in its determination as to Perfect 10's counterclaims for civil theft, punitive damages, and attorney's fees.

{¶31} Perfect 10 brought its counterclaim for civil theft based on R.C. 2307.60(A)(1), which states, "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code." Perfect 10 alleged that it suffered damages that were proximately caused by PCC's deceptive conduct as to the crime of theft of the $30,000 payment that was not credited to their account. The jury concluded the greater weight of the evidence demonstrated that PCC engaged in theft as to the $30,000 payment.

{¶32} The trial court instructed the jury pursuant to R.C. 2307.61(A)(1)(b)(ii) as to the measure of damages on the counterclaim for civil theft:

(A) If a property owner brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property, the property owner may recover as follows:

(1) In the civil action, the property owner may elect to recover moneys as described in division (A)(1)(a) or (b) of this section:

* * *

(b) Liquidated damages in whichever of the following amounts is greater:

(i) Two hundred dollars;

(ii) Three times the value of the property at the time it was willfully damaged or was the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified or otherwise altered, or is resalable at its full market price. This division does not apply to a check, negotiable order of withdrawal, share draft, or other negotiable instrument that was returned or dishonored for insufficient funds by a financial institution if the check, negotiable order of withdrawal, share draft, or other negotiable instrument was presented by an individual borrower to a licensee under sections 1321.35 to 1321.48 of the Revised Code for a loan transaction.

The jury awarded Perfect 10 the amount of $1.00, which was three times $0.33.

{¶33} In its motion for JNOV, PCC argued the jury's award of $1.00 for the counterclaim of civil theft was barred because the jury credited the $30,000 payment

Perfect 10 claimed was stolen against PCC's award of damages on its breach of contract claim. In arguing so, PCC provided the trial court with its interpretation of the jury's award of damages. The parties agreed Perfect 10 contracted to pay PCC $98,580 under the 2018 Contract. The jury found Perfect 10 owed PCC for additional work in the amount of $5,600 and a final payment of $9,858 and awarded PCC $15,458 on its breach of contract claim. PCC argued the jury's award under its claim for breach of contract equaled the following:

| 2018 Contract | $98,580 |
| Additional Tile Work | + 5,600 |
| Payment | - 30,000 |
| Payment | - 20,000 |
| Payment | - 38,722 |
| Jury Award | $15,458 |

The jury then found PCC liable for civil theft of the $30,000 payment and awarded Perfect 10 statutory damages. PCC contends the jury provided Perfect 10 with a double recovery by crediting it $30,000 on PCC's breach of contract claim and awarding Perfect 10 damages on its counterclaim for civil theft. Upon our de novo review, we conclude the trial court did not err in overruling PCC's motion for JNOV on this issue.

{¶34} In Ohio, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, 1270 (9th Dist.1996). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Id.* PCC contends that Perfect 10's civil theft counterclaim

must fail as a tort because its essence is derived from contract. *See STE Investments, LLC v. Macprep, Ltd.*, 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614, ¶ 42. According to PCC, the jury's "credit" of the $30,000 payment in its determination of damages for its breach of contract claim demonstrates that Perfect 10's damages from the alleged theft of the $30,000 payment were the result of conduct governed by the 2018 contract and not an independent tort.

{¶35} In support of its argument, PCC cites *STE Investments LLC v. Macprep, Ltd.,* 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614. In *STE Investments*, the Sixth District Court of Appeals found that a property management group could not be liable for a claim of civil theft brought by the condominium owners. The condominium owners filed suit and brought claims of conversion, civil theft, and racketeering based on the property management group's alleged misuse and improper allocation of funds. The condominium owner's claim for civil theft stated as follows:

89. Revised Code Section 2307.60(A)(1) clearly states that any person who has been injured by criminal act may bring a civil action for the recovery of damages. Such damages include punitive or exemplary damages.

90. That individual and entity Defendants through a pattern of collusion, fraudulent conduct, and intentional behavior did deprive the Plaintiffs of money and use of their property which constitutes theft and embezzlement under the Ohio Revised Code.

91. The Plaintiffs have been damaged financially in amounts to be determined at trial for the inappropriate expenses and diversion of funds as

set forth above as well as by way of the deprived use of their property and value associated therewith.

*Id.* at ¶ 39.

{¶36} The Sixth District affirmed the trial court's judgment to dismiss the claim for civil theft under Civ.R. 12(B)(6). It found the relationship between the property management group and condominium owners was regulated by condominium declarations and bylaws. *Id.* at ¶ 6. R.C. 2307.60(B)(1)(a) defines a "tort action" as "a civil action for damages for injury, death, or loss to person or property other than a civil action for damages for a breach of contract or another agreement between persons." The court found the claim for civil theft essentially alleged mismanagement and improper assessments that breached the terms of the condominium declarations and bylaws, therefore a claim for civil theft would not lie. *Id.* at ¶ 42.

{¶37} PCC's reliance on *STE Investments* intertwines with its argument that the economic loss doctrine precludes Perfect 10's recovery for civil theft. We examine our decision in *Windsor Medical Center, Inc. v. Time Warner Cable, Inc.*, 2021-Ohio-158, 167 N.E.3d 23 (5th Dist.), which thoroughly discusses the economic loss doctrine.

{¶38} In that case, Windsor Medical, a skilled nursing and senior living center, brought an action against Time Warner Cable, nka Spectrum, which by a contractual agreement provided the facility's telephone, internet, and cable service. *Id.* at ¶ 2. Despite reassurances from Spectrum that Windsor Medical would not have international calling capabilities under the contract, Spectrum billed Windsor Medical for international calls. Spectrum acknowledged the error and offered a partial credit for the billing error. Spectrum, however, did not correct the billing error, did not give Windsor Medical the

credit, sent the matter to collections, and threatened to disconnect the phone service if the disputed charge was not paid. *Id.* at ¶ 30. Windsor Medical paid the charges to maintain phone service. Spectrum then offered Windsor Medical an opportunity to replace its internet service with a better internet speed at a lower rate. Windsor Medical signed a new internet contract and Spectrum agreed to disconnect the old service, but Spectrum never disconnected the old service. It proceeded to bill Windsor Medical for the old service and the new service. Windsor Medical repeatedly notified Spectrum of the error, which Spectrum stated it would resolve. Spectrum did not resolve the error, continued to double-bill Windsor Medical, sent the matter to collectors, and disconnected Windsor Medical's phone system due to non-payment. *Id.* at ¶ 31-34. Windsor Medical paid the disputed charges to restore its phone service.

{¶39} Windsor Medical sought damages for fraud and violations of Ohio's Deceptive Trade Practices Act. *Id.* at ¶ 4. The jury found in favor of Windsor Medical on the fraud claim and awarded compensatory and punitive damages. *Id.* at ¶ 19. The jury found in favor of Spectrum on Windsor Medical's claim for deceptive trade practices. *Id.* Spectrum filed a motion for judgment notwithstanding the verdict, which the trial court denied. *Id.* at ¶ 20.

{¶40} On appeal, Spectrum argued the economic loss rule barred Windsor Medical's fraud claim as such claim sounded in contract. *Id.* at ¶ 24. We disagreed, finding:

> There are exceptions, however, to the application of the economic loss rule
> to bar recovery in tort of purely economic loss. A plaintiff may pursue such
> a tort claim if it is "based exclusively upon [a] discrete, preexisting duty in

tort and not upon any terms of a contract or rights accompanying privity." *Corporex [Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701] *supra* at ¶ 9. These types of exempt claims may include negligent misrepresentation, breach of fiduciary duty, fraud, and conversion. *Potts v. Safeco Ins. Co.*, 5th Dist. No. 2009 CA 0083, 2010-Ohio-2042, 2010 WL 1839738, ¶ 21; *Morgan v. Mikhail*, 10th Dist. No. 08AP-87, 2008-Ohio-4598, 2008 WL 4174063, ¶ 69.

Therefore, a tort claim can proceed where "the facts of the case show an intentional tort committed independently, but in connection with a breach of contract * * *." *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 99. Accordingly, where a tort claim alleges a duty was breached independent of the contract, the economic loss rule does not apply. *See, Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694, 961 N.E.2d 205, ¶ 16 (6th Dist.) *See also, Eysoldt v. ProScan Imaging*, 194 Ohio App.3d 630, 2011-Ohio-2359, 957 N.E.2d 780, ¶21 (1st Dist.) (finding the economic loss rule does not apply to intentional torts, as they are breaches of duties beyond those created by contract). Where the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract. *Strategy Group for Media, Inc. v. Lowden*, 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, 2013 WL 1343614, ¶ 30.

*Id.* at ¶ 27-28

{¶41} In accordance with our decision in *Windsor Medical,* we find the economic loss rule does not apply to bar Perfect 10's counterclaim for civil theft of the $30,000 payment. We likewise find *STE Investments* to be unpersuasive under the facts of the present case. Pursuant to the 2018 Contract, Perfect 10 was to pay PCC for the construction of improvements on the nail salon. The evidence presented at trial, however, demonstrated that as to the $30,000 payment, there was sufficient evidence to support that PCC engaged in deceptive conduct independent of the parties' obligations under the 2018 Contract. Tran testified he made the $30,000 payment on July 2, 2018 but forgot to ask for a receipt. On August 29, 2018, when Tran made the $20,000 payment, he asked for a receipt for the $20,000 payment and the previous $30,000 payment. At trial, Perfect 10 presented receipts for a $20,000 payment and $30,000, both dated August 29, 2018. Pham testified that he did not keep copies of his own receipts. He stated the August 29, 2018 receipt for $30,000 was a forgery. Nguyen was presented with a text he sent to Tran on October 22, 2018 that stated PCC received the first payment of $50,000, which only covered the first payment and partial second payment. Nguyen testified he was referring to the check for $49,000 and the $20,000 payment.

{¶42} While there was a contract between PCC and Perfect 10, the damages alleged by Perfect 10 based on the $30,000 payment were separate and distinct from the damages caused by the breach of contract. There was sufficient evidence to support the jury's verdict and accordingly, we find the trial court did not err in denying PCC's motion for JNOV on Perfect 10's counterclaim for civil theft.

{¶43} Because we find that Perfect 10's counterclaim for civil theft survives, we overrule PCC's argument on appeal that the related award of punitive damages and attorney's fees must fail.

{¶44} PCC's first Assignment of Error is overruled.

**II.**

{¶45} In its second Assignment of Error, PCC contends the trial court erred when it denied its motion for JNOV as to the jury's award of damages to Perfect 10 for its counterclaim of breach of contract. PCC argues the evidence presented at trial was insufficient to establish the measure of damages awarded by the jury. We disagree.

{¶46} PCC characterizes the jury's measure of damages as "loss of use," which it contends is the improper measure of damages in a breach of contract claim. The loss of use measure of damages is used to calculate damages for injury to real property. *See Pingue v. Preferred Real Estate Invests II, LLC*, 5th Dist. Delaware No. 15 CAE 01 0008, 2015-Ohio-4751, ¶ 61. " '[T]he general measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract.' " *Westfield Ins. Group v. Silco Fire & Sec.*, 5th Dist. Stark No. 2018CA00122, 2019-Ohio-2779, ¶ 63 quoting *Williams v. Williams*, 5th Dist. Morrow No. 2010-CA-0006, 2011-Ohio-1200, ¶ 21 quoting *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 31–32, 783 N.E.2d 523 (7th Dist.2002), citing *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159, 351 N.E.2d 121 (1976). PCC argues that in this breach of contract counterclaim, lost profits were the proper measure of damages. We note that PCC did

not object to the trial court's jury instructions as to the measure of damages for a claim of breach of contract.

{¶47} The terms of the 2018 Contract stated PCC would complete the construction improvements in five months, which Perfect 10 testified would have been November 2018. The evidence showed that construction took nine months to complete, and a certificate of occupancy was issued in March 2019. When PCC did not receive a timely payment from Perfect 10, PCC stopped work on the project. Pham testified that while the 2018 Contract contained provisions for non-payment, Pham did not want to waste time writing a letter and was not obligated to follow the terms of the contract. Evidence was presented that after the 150 days of free rent, Perfect 10 was required to pay its monthly rent for the expanded space but was unable to utilize the space because the construction was not completed. On Perfect 10's counterclaim for breach of contract, the jury awarded Perfect 10 the amount of $18,201.96 and wrote "4 months rent" next to the award on the jury interrogatory.

{¶48} A JNOV may be granted only where the evidence is totally insufficient to support the verdict. *Central Ohio Medical Textiles v. PSC Metals, Inc.*, 10th Dist. Franklin No. 19AP-167, 2020-Ohio-591, ¶ 30 citing *Harper v. Lefkowitz*, 10th Dist. Franklin Nos. 09AP-1090, 09AP-1116, 2010-Ohio-6527, ¶ 8 citing *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App.3d 647, 852 N.E.2d 1235, 2006–Ohio–2206, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. The jury was instructed on the measure of damages for Perfect 10's counterclaim for breach of contract: "If you find that they have suffered damages, they are entitled to damages in an amount sufficient to place them in the same position in which they would have been in had the contract been fully performed by Pham

Construction, so long as the damages are reasonably certain and reasonably foreseeable." Based on the terms of the 2018 Contract, evidence of the breach of the contract, and the jury instructions as to the measure of damages for breach of contract, there was sufficient evidence to support the jury's damage calculation and that calculation should not be disturbed.

{¶49} PCC's second Assignment of Error is overruled.

## CONCLUSION

{¶50} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.